COA Case No. 13-6486

_____

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

LABORERS' LOCAL 265 PENSION FUND; PLUMBERS AND PIPEFITTERS
LOCAL NO. 572 PENSION FUND

     Plaintiffs-Appellants

v.

ISHARES TRUST; ISHARES, INC.; ISHARES RUSSELL MIDCAP INDEX
FUND; ISHARES MSCI EAFE INDEX FUND; ISHARES MSCI EMERGING
MARKETS INDEX FUND; ISHARES RUSSELL 2000 GROWTH INDEX
FUND; ISHARES RUSSELL 2000 VALUE INDEX FUND; ISHARES CORE
S&P MID CAP INDEX FUND; ISHARES CORE S&P SMALL CAP INDEX
FUND; ISHARES DOW JONES REAL ESTATE INDEX FUND; BLACKROCK
FUND ADVISORS; BLACKROCK INSTITUTIONAL TRUST COMPANY;
ROBERT S. KAPITO; MICHAEL LATHAM; ROBERT H. SILVER; GEORGE
G.C. PARKER; JOHN E. MARTINEZ; CECILIA H. HERBERT; CHARLES A.
HURTY; JOHN E. KERRIGAN; MADHAV V. RAJAN

     Defendants-Appellees

_____

BRIEF OF THE APPELLEES

_____

On Appeal from the United States District Court
for the Middle District of Tennessee
Case No. 3:13-cv-00046

**SKADDEN, ARPS, SLATE,**
  **MEAGHER & FLOM LLP**
Seth M. Schwartz
Jeremy A. Berman
Four Times Square
New York, NY 10036-6522
Tel: (212) 735-3000

**RILEY WARNOCK &**
  **JACOBSON, PLC**
John R. Jacobson
Milton S. McGee, III
1906 West End Avenue
Nashville, TN 37203
Tel: (615) 320-3700

*Attorneys for iShares Appellees*

**STROOCK & STROOCK & LAVAN LLP**
Bruce H. Schneider
180 Maiden Lane
New York, NY  10038
Tel:  (212) 806-5400

*Attorneys for Director Appellees*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1 of the Rules of this Court, the iShares Appellees hereby make the following disclosures:

1.    Is said party a subsidiary or affiliate of a publicly-owned corporation?

Defendant-Appellees BlackRock Fund Advisors and BlackRock Institutional Trust Company, N.A. are direct or indirect subsidiaries of nonparty BlackRock, Inc., a publicly-held company with stock traded on the New York Stock Exchange. No other appellee is a subsidiary or affiliate of a publicly-owned corporation.

2.   Is there a publicly-owned corporation, not a party to the appeal, that has a financial interest in the outcome?

More than ten percent (10%) of the outstanding shares of common stock issued by nonparty BlackRock, Inc. is owned by nonparty PNC Financial Services Group, Inc., a publicly-held corporation with stock traded on the New York Stock Exchange.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................iv

STATEMENT OF THE ISSUES ...........................................................2

STATEMENT OF THE CASE ..............................................................2

I.    ALLEGATIONS OF THE COMPLAINT ....................................2

    A.    The Parties ...............................................................2

    B.    The Lending Fee .......................................................4

II.    PROCEDURAL BACKGROUND ................................................6

SUMMARY OF THE ARGUMENT .....................................................7

ARGUMENT .......................................................................................9

I.    THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 36(b) OF THE ICA ..................................................9

    A.    Section 36(b)(4) Bars Plaintiffs' Section 36(b) Claim ........9

    B.    The SEC Has Not Adopted Plaintiffs' Position ................12

    C.    Plaintiffs' New Arguments Are Meritless ........................17

        1.    Section 36(b)(4) Draws No Distinction Between Investment Advisers and Their Affiliates ...............17

            (a)    Plaintiffs Have Waived All Arguments Raised for the First Time on Appeal ................17

            (b)    There Are No Exceptions to Section 36(b)(4) ..............19

            (c)    Plaintiffs' Construction of Section 36(b)(4) Also Is Foreclosed by Section 36(b)(3) ....................20

(d)    Fees May Not Be Aggregated Under Section 36(b) ......21

(e)    The Complaint Alleges No Section 36(b) Claim
Directed at BFA's Advisory Fee ...................................23

2.    There is No Legislative History Supporting Plaintiffs'
Construction of Section 36(b)(4)...............................23

D.    There Is Nothing Irrational About the District Court's
Construction of Section 36(b)(4).......................................26

II.    THERE IS NO PRIVATE RIGHT OF ACTION UNDER SECTION
36(a) ........................................................................................29

A.    *Sandoval* and its Progeny Foreclose a Private Right of Action
Under Section 36(a) ........................................................29

B.    Plaintiffs' Authorities Are No Longer Good Law or Are
Distinguishable ................................................................32

C.    Plaintiffs' New Arguments on Appeal Are Meritless ........34

CONCLUSION .........................................................................................37

CERTIFICATE OF COMPLIANCE.......................................................39

CERTIFICATE OF SERVICE.................................................................40

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS .............41

# TABLE OF AUTHORITIES

**Cases**                                                                                        **Page(s)**

*Alexander v. Allianz Dresdner Asset Management of America Holding, Inc.,*
    509 F. Supp. 2d 190 (D. Conn. 2007)........................................................33

*Alexander v. Sandoval,*
    532 U.S. 275 (2001).......................................................... 12, 29, 30, 31, 32

*Bellikoff v. Eaton Vance Corp.,*
    481 F.3d 110 (2d Cir. 2007)...................................................... 21, 31, 32, 33

*Boyce v. AIM Management Group, Inc.,*
    No. H-04-2587, 2006 U.S. Dist. LEXIS 71062 (S.D. Tex. Sept.
    29, 2006).....................................................................................33

*Bruesewitz v. Wyeth LLC,*
    131 S. Ct. 1068 (2011)..............................................................36

*Carroll v. United States,*
    174 F.2d 412 (6th Cir. 1949)......................................................20

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
    467 U.S. 837 (1984)...............................................................13

*Davis v. Bailey,*
    No. 05-cv-00042-WYD-OES, 2005 U.S. Dist. LEXIS 38204 (D. Colo.
    Dec. 22, 2005) ...............................................................35, 36

*Dice Corporation v. Bold Technologies,*
    --- Fed.Appx. ----, Nos. 12-2513, 13-1712, 2014 U.S. App. LEXIS
    1496 (6th Cir. Jan. 24, 2014)......................................................18

*In re Eaton Vance Mutual Funds Fee Litigation,*
    380 F. Supp. 2d 222 (S.D.N.Y. 2005) ...........................................21, 28

*Exxon Mobil Corp. v. Allapattah Services Inc.,*
    545 U.S. 546 (2005)...............................................................24

*Forsythe v. Sun Life Financial, Inc.*,
    417 F. Supp. 2d 100 (D. Mass. 2006)..........................................................33

*In re Goldman Sachs Mut. Funds Fee Litig.*,
    04 Civ. 2567, 2006 U.S. Dist. LEXIS 1542 (S.D.N.Y. Jan. 13, 2006).........22

*Gonzaga University v. Doe*,
    536 U.S. 273 (2002)................................................................................29, 30

*Hamilton v. Allen*,
    396 F. Supp. 2d 545 (E.D. Pa. 2005).........................................................33

*Jacobs v. Bremner*,
    378 F. Supp. 2d 861 (N.D. Ill. 2005).........................................................36

*Jordan v. City of Detroit*,
    --- Fed. Appx. ----, No. 12-2296, 2014 U.S. App. LEXIS 3342
    (6th Cir. Feb., 21, 2014)..............................................................................7

*Kelly v. Robinson*,
    479 U.S. 36 (1986)......................................................................................25

*Krinsk v. Fund Asset Management, Inc.*,
    875 F.2d 404 (2d Cir. 1989).......................................................................20

*Lessler v. Little*,
    857 F.2d 866 (1st Cir. 1988) ......................................................................12

*Levy v. Alliance Capital Management L.P.*,
    No. 98-9528, 1999 U.S. App. LEXIS 20213 (2d Cir. Aug. 20, 1999) .........22

*In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*,
    434 F. Supp. 2d 233 (S.D.N.Y. 2006).........................................................33

*Meyer v. Oppenheimer Management Corp.*,
    895 F.2d 861 (2d Cir. 1990)............................................................22, 23, 27

*MIK v. Federal Home Loan Mortgage Corp.*,
    --- F.3d ----, No. 12-6051, 2014 U.S. App. LEXIS 2332
    (6th Cir. Feb. 7, 2014).........................................................................30, 31

*Moses v. Providence Hospital & Medical Centers, Inc.*,
    561 F.3d 573 (6th Cir. 2009).......................................................................26

*Northstar Financial Advisors, Inc. v. Schwab Investors*,
   615 F.3d 1106 (9th Cir. 2010)..............................................................32, 35

*New York City Employees' Retirement System v. SEC*,
   45 F.3d 7 (2d Cir. 1995)...................................................................13

*Public Citizen v. Farm Credit Administration*,
   938 F.2d 290 (D.C. Cir. 1991) .........................................................25

*Rohrbaugh v. Investment Company Institute*,
   No. 00-1237, 2002 U.S. Dist. LEXIS 13401 (D.D.C. July 2, 2002). ...........12

*Roosevelt v. E.I. DuPont de Nemours & Co*.,
   958 F.2d 416 (D.C. Cir. 1992). .........................................................13

*Santomenno ex rel. John Hancock Trust v. John Hancock Life*
   *Insurance Co. (U.S.A.)*,
   677 F.3d 178 (3d Cir.), *cert. denied*, 133 S. Ct. 529 (2012)........................33

*Schmitt v. City of Detroit*,
   395 F.3d 327 (6th Cir. 2005)...........................................................24

*Schwegmann Bros. v. Calvert Distillers Corp*.,
   341 U.S. 384 (1951).......................................................................24

*Sigmon Fuel Co. v. Tennessee Valley Authority*,
   754 F.2d 162 (6th Cir. 1985)...........................................................18

*Smith v. Franklin/Templeton Distributors, Inc.*,
   No. C 09-4775 PJH, 2010 U.S. Dist. LEXIS 112934 (N.D. Cal.
   Oct. 22, 2010) ...............................................................................34

*Smith v. Oppenheimer Funds Distribution, Inc.*,
   824 F. Supp. 2d 511 (S.D.N.Y. 2011) ............................................27, 33

*Touche Ross & Co. v. Redington*,
   442 U.S. 560 (1979)........................................................................34

*Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*,
   444 U.S. 11 (1979)..........................................................................33

*United States v. Choice*,
   201 F.3d 837 (6th Cir. 2000)...........................................................26

*Wiener v. Eaton Vance Distributors, Inc.*,
    No. 10-10515-DPW, 2011 U.S. Dist. LEXIS 38375 (D. Mass.
    Mar. 30, 2011) ........................................................................................33

*Zucker v. Federated Shareholder Services Co.*,
    No. 2:06cv241, 2007 U.S. Dist. LEXIS 15186 (W.D. Pa.
    Mar. 5, 2007). .......................................................................................21

## <u>Statutes</u>

15 U.S.C. § 80a-2(a)(19) ...........................................................................3

15 U.S.C. § 80a-6 ....................................................................................11

15 U.S.C. § 80a-10(a) ................................................................................3

15 U.S.C. § 80a-17 ...............................................................................8, 11

15 U.S.C. § 80a-17(d) ......................................................................*passim*

15 U.S.C. § 80a-17(e)……………………………………………….*passim*

15 U.S.C. § 80a-35(a) ......................................................................*passim*

15 U.S.C. § 80a-35(b) ......................................................................*passim*

15 U.S.C. § 80a-35(b)(3) .................................................................*passim*

15 U.S.C. § 80a-35(b)(4) .................................................................*passim*

17 C.F.R. § 270.17d-1(c) (2013) .............................................................16

Fed. R. Civ. P. 12(b)(6).............................................................................6

Fed. R. Civ. P. 23.1..................................................................................6

## <u>Other Authorities</u>

*Maxim Series Fund, Inc.*,
    Investment Company Act Release No. 25,840, 2002 SEC LEXIS
    3095 (Dec. 2, 2002) ..................................................................................5

*Maxim Series Fund, Inc.*,
    Investment Company Act Release No. 25,878, 2002 SEC LEXIS
    3327 (Dec. 27, 2002) .............................................................6, 11

*Norwest Bank Minnesota, N.A.*,
    SEC No-Action Letter, 1995 SEC No-Act. LEXIS 529
    (May 25, 1995) ............................................................ 13, 14, 15

*In the Matter of Securities Corp. General*,
    Investment Company Act Release No. 3014, 1960 SEC LEXIS
    531 (April 12, 1960)..................................................................... 28

Plaintiffs-Appellants Laborers' Local 265 Pension Fund and Plumbers and Pipefitters Local No. 572 Pension Fund ("Plaintiffs" or the "Pension Funds") appeal from the order (Order, R. 53, Page ID # 919) and judgment (Judgment, R. 54, Page ID # 920) of the United States District Court for the Middle District of Tennessee (Trauger, J.) entered on October 24, 2013 (the "Judgment").  The Judgment grants the motions of the defendants-appellees to dismiss Plaintiffs' complaint in this action ("Complaint" or "Compl.") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant-Appellees iShares Trust, iShares, Inc., iShares Funds,[1] BlackRock Fund Advisors, BlackRock Institutional Trust Company, N.A., Robert S. Kapito and Michael Latham (collectively "Defendants" or the "iShares Appellees") and Defendant-Appellees Robert H. Silver, George G.C. Parker, John E. Martinez, Cecilia H. Herbert, Charles Hurty, John Kerrigan, and Madhav V. Rajan (collectively the "Director Appellees") respectfully submit that the district court properly dismissed the Complaint, and the Judgment should be affirmed.

---

[1]  The iShares Funds are iShares Russell Midcap Index Fund, iShares MSCI EAFE Index Fund, iShares MSCI Emerging Markets Index Fund, iShares Russell 2000 Growth Index Fund, iShares Russell 2000 Value Index Fund, iShares Core S&P Mid Cap Index Fund, iShares Core S&P Small-Cap Index Fund and iShares Dow Jones US Real Estate Index Fund.

## STATEMENT OF THE ISSUES

1.     Do Plaintiffs have a private right of action under Section 36(b) of the Investment Company Act of 1940 (the "ICA") to challenge compensation allegedly paid to two of the Defendants in accordance with an order issued by the Securities and Exchange Commission (the "SEC") pursuant to Section 17(d) of the ICA given that Section 36(b)(4) clearly and unequivocally provides that there is no such right of action?

2.     Is there a private right of action under Section 36(a) of the ICA given that the section, in contrast to Section 36(b), contains no language expressly authorizing a private right of action under any circumstances and expressly provides that the SEC has a right of action to enforce compliance with the section?

## STATEMENT OF THE CASE

## I.     ALLEGATIONS OF THE COMPLAINT

## A.     The Parties

Defendants-appellees iShares Trust and iShares, Inc., are investment companies (the "iShares Investment Companies") registered with the SEC. (Compl., R. 1, Page ID # 4 (¶¶ 10-11).)  Both companies have issued several series of common stock, with each series bearing the name of a different exchange traded fund ("iShares Fund"), and each fund comprising an investment portfolio of securities (the "Portfolio Securities") tracking

2

specific indexes.  (Compl., R. 1, Page ID # 4-5 (¶¶ 12-13).)  By way of example, iShares Trust issues the shares of defendant-appellee Russell 2000 Growth Index Fund (the "Russell Growth Fund"), one of the iShares Funds, which are sold to the public and traded on national stock exchanges.  The shares represent interests in the Portfolio Securities of the Russell Growth Fund which, in this example, are stocks included in the Russell 2000 Index.

The iShares Funds lend their Portfolio Securities to third party borrowers pursuant to agreements typically requiring the borrowers to post cash collateral as security for repayment of the loans, *i.e.*, for the return of the borrowed Portfolio Securities to the Funds.  The lending agent ("Lending Agent") for the iShares Funds, defendant-appellee BlackRock Institutional Trust Company, N.A. ("BTC"), invests the collateral and retains a portion of the net income earned on the investment as compensation for arranging and administering the loans (the "Lending Fee").  (Compl., R. 1, Page ID # 5, 17 (¶¶ 14, 65).)  BTC is the parent company of defendant-appellee BlackRock Fund Advisors ("BFA"), which acts as investment adviser to the iShares Investment Companies and the iShares Funds.[2]

---

[2]    The iShares Funds are managed under the direction of Boards of Directors comprised of the same nine members, all of whom are named as defendants in this case.  (Compl., R. 1, Page ID # 7-9 (¶¶ 21-31).) Two of the directors, Robert S. Kapito and Michael Latham, are iShares Appellees affiliated with BTC and BFA.  (Compl. R. 1, Page ID # 9 (¶

3

The Pension Funds allegedly own shares of one or more of the iShares Funds.  (Compl., R. 1, Page ID # 3 (¶¶ 6-7).)  Their Complaint does not allege that they lost any money or failed to earn any return on their investment in those Funds.  Rather, the Pension Funds complain that the Lending Fee is excessive.[3]  (Compl., R. 1, Page ID # 2, 17-19, 21-28, 30-34 (¶¶ 1, 4, 64, 70, 73, 86-88, 92, 95, 97, 105-106, 110, 116-123, 139, 144, 147, 151, 158, 161, 166).)

## B.    **The Lending Fee**

BTC's compensation for securities lending services on behalf of the iShares Funds (the "Securities Lending Transactions") is governed by a securities lending agreement among BTC, the iShares Investment Companies and the iShares Funds (the "Lending Agreement").  (Compl., R. 1, Page ID # 18 (¶ 70).)  Under the terms of the Lending Agreement, BTC is entitled to the Lending Fee, which is calculated as 35% of the net amount

---

31).)  The remaining directors are unaffiliated with any iShares Fund, BFA, BTC, or any of their affiliates. None of the unaffiliated directors is "interested" within the meaning of Sections 2(a)(19) and 10(a) of the ICA, 15 U.S.C. §§ 80a-2(a)(19), 80a-10(a).

[3]    The facts alleged in the Complaint are assumed to be true solely for purposes of Defendants' motion to dismiss.  The Appellees otherwise have denied, and continue to vigorously deny, the material allegations of the Complaint, including the demonstrably erroneous assertion that the Lending Fee is "disproportionately large and far higher than would be negotiated with an unaffiliated agent in an arm's length transaction." (Compl., R. 1, Page ID # 18 (¶ 70).)

earned from loaning Portfolio Securities to third parties on behalf of the iShares Funds.  (*Id.*)  According to the Complaint, notwithstanding the 35% limitation on compensation to BTC specified in the Lending Agreement, BTC and BFA purportedly receive a Lending Fee equal to 40% of the net revenue generated by the Securities Lending Transactions, and the iShares Funds receive the remaining 60% of that revenue.  (Compl., R. 1, Page ID # 18, 19, 22 (¶¶ 67-69, 72, 90).)  There is no allegation that any portion of the Lending Fee purportedly paid to BFA is compensation for the investment advisory services BFA renders to the iShares Funds.

Under Section 17(d) of the ICA, neither BTC nor any of its affiliates would be permitted to receive the Lending Fee as compensation for the Securities Lending Transactions absent an order from the SEC approving the compensation and exempting it from Section 17(d).  (Compl., R. 1, Page ID # 36 (¶¶ 176-179).)  On December 27, 2002, the SEC issued such an order (the "Exemptive Order") to Defendants' predecessors on condition, among others, that a majority of the disinterested members of the Boards of the iShares Funds approve each Securities Lending Transaction.  (Compl., R. 1, Page ID # 36  (¶ 180).)  *See Maxim Series Fund, Inc.*, Investment Company Act Release No. 25,840, 2002 SEC LEXIS 3095 (Dec. 2, 2002) (notice of application) (App. to Defs.' Mem. of Law in Supp. of Mot. to Dismiss the

Compl., R. 22-1, Page ID # 416-421 (Ex. T)); *Maxim Series Fund, Inc.*,

Investment Company Act Release No. 25,878, 2002 SEC LEXIS 3327 (Dec.

27, 2002) (order) (App. to Defs.' Mem. of Law in Supp. of Mot. to Dismiss

the Compl., R. 22-1, Page ID # 422-423 (Ex. U)).

## II.    **PROCEDURAL BACKGROUND**

The Complaint alleges in essence that the Lending Fee is excessive in

violation of various provisions of the ICA, namely, Sections 36(a), 36(b) and

47(b).  (Compl., R. 1, Page ID # 26-28 (¶¶ 108-122); Compl., R. 1, Page ID

# 40-41 (¶¶ 203-10); Compl., R. 1, Page ID # 43-44 (¶¶ 217-25).)

Defendants filed motions to dismiss the Complaint pursuant to Rules

12(b)(6) and 23.1 of the Federal Rules of Civil Procedure.  (Mot. of Defs.

iShares Trust, iShares, Inc., the ETF Defs., Blackrock Fund Advisors,

Blackrock Inst. Trust Co., N.A., Robert S. Kapito and Michael Latham to

Dismiss the Compl., R. 21, Page ID # 113; Independent Director-Defs.' Mot.

to Dismiss, R. 24, Page ID # 426).  On August 28, 2013, the district court

entered an order granting Defendants' motions pursuant to Rule 12(b)(6)

(the "Decision").  (Order, R. 49, Page ID # 908.)

As to the Section 36(b) claim in Count I of the Complaint, the district

court dismissed it on the ground it is barred by Section 36(b)(4) given that

the Lending Fee has been approved by the SEC pursuant to an exemptive

order issued under Section 17 of the ICA.  (Memorandum, R. 48, Page ID # 896-98.)  The district court also held that the Pension Funds have no private right of action under Sections 47(b) and 36(a) of the ICA.[4]  The district court, therefore, dismissed Counts II and III of the Complaint. (Memorandum, R. 48, Page ID # 898-906.)[5]

Although the district court granted the Pension Funds leave to file an amended complaint within a specified time, they declined to do so.  (Order, R. 49, Page ID # 908.)  Consequently, the district court dismissed the case with prejudice on October 24, 2013.  (Order, R. 53, Page ID # 919; Entry of Judgment, R. 54, Page ID # 920.)

## SUMMARY OF THE ARGUMENT

**Count I** of the Complaint alleges a claim pursuant to Section 36(b) of the ICA, 15 U.S.C. § 80a-35(b), which authorizes shareholders of registered

---

[4]    The district court did not reach an alternative ground argued by Defendants for dismissing the Section 36(a) claim, namely, Plaintiffs lacked standing to assert it because it is derivative in nature and Plaintiffs failed to satisfy the presuit demand requirements applicable to such claims.  The district court also did not reach Defendants' argument that the Section 36(b) claim asserted against the defendant directors was barred by Section 36(b)(3) of the statute on the ground the Complaint does not allege that the directors were recipients of the Lending Fee.

[5]    The Pension Funds did not appeal the district court's dismissal of Count II alleging violations of Section 47(b) of the ICA, thereby abandoning their claim pursuant to that section.  *See Jordan v. City of Detroit*, --- Fed. Appx. ----, No. 12-2296, 2014 U.S. App. LEXIS 3342, at *4 n.2 (6th Cir. Feb. 21, 2014).

investment companies ("funds") to sue the funds' investment advisers or other affiliates to recover any allegedly excessive compensation received by those entities. This private right of action is expressly limited, however, by Section 36(b)(4) of the ICA, which provides that Section 36(b) shall not apply to any compensation paid in connection with transactions subject to Section 17 of the ICA, 15 U.S.C. § 80a-17, or orders issued under Section 17 by the SEC ("Section 17 Compensation"). As alleged in the Complaint, the Lending Fee at issue is Section 17 Compensation, *i.e.*, it is paid in connection with Securities Lending Transactions that, by Plaintiffs' own admission, are subject *both* to Section 17 *and* an order issued by the SEC approving the Lending Fee and exempting it from Section 17. Accordingly, Plaintiffs have no claim under Section 36(b), and the district court properly dismissed Count I of the Complaint.

**Count III** of the Complaint alleges claims pursuant to Section 36(a) of the ICA. There is, however, no private right of action under this section of the statute. The district court therefore properly dismissed Count III of the Complaint.

**ARGUMENT**

**I.    THE COMPLAINT FAILS TO STATE A CLAIM
         UNDER SECTION 36(b) OF THE ICA_____**

**A.    Section 36(b)(4) Bars Plaintiffs' Section 36(b) Claim**

In Count I of the Complaint, Plaintiffs allege that BTC and BFA

receive an allegedly excessive Lending Fee in breach of fiduciary duties

owed to the iShares Investment Companies under Section 36(b) of the ICA.

(Compl., R. 1, Page ID # 26-28 (¶¶ 108-22).)  The fatal flaw with this claim

is that it is precluded as a matter of law by Section 36(b)(4) of the statute,

which provides that Section 36(b) has no application to compensation paid

in connection with transactions, such as the Securities Lending Transactions,

subject to Section 17 of the ICA.

Section 36(b) creates a limited private right of action authorizing fund

shareholders to bring breach of fiduciary duty claims on behalf of the funds

against their investment adviser or its affiliates with respect to compensation

they receive from the funds.  The section provides in part as follows:

> [T]he investment adviser of a registered investment company
> shall be deemed to have a fiduciary duty with respect to the
> receipt of compensation for services . . . paid by such registered
> investment company . . . to such investment adviser or any
> affiliated person of such investment adviser.  An action may be
> brought under this subsection by . . . a security holder of such
> registered investment company on behalf of such company,
> against such investment adviser, or any affiliated person of such
> investment adviser, or any other person enumerated in
> subsection (a) of this section who has a fiduciary duty

concerning such compensation or payments, for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person.

15 U.S.C. § 80a-35(b).

The foregoing private right of action is subject to a number of provisos found in subsections (1) through (5) of Section 36(b). As is relevant here, Section 36(b)(4) provides that fund shareholders have no right of action whatsoever under Section 36(b) with respect to compensation paid to investment advisers or their affiliates in connection with transactions subject to Section 17 of the ICA or orders issued by the SEC thereunder. As set forth in subsection (4), the provisions of Section 36(b):

> shall *not* apply to compensation or payments made in connection with transactions subject to [Section 17] of this title, or rules, regulations, or orders thereunder.

15 U.S.C. § 80a-35(b)(4) (emphasis added) (citation omitted).[6]

Count I falls prey to Section 36(b)(4) because it repeatedly alleges that the iShares Funds paid purportedly excessive Lending Fees to Defendants BTC and BFA in connection with Securities Lending

---

[6] Section 17(d) prohibits investment companies and their affiliates from participating jointly in transactions "in contravention of such rules and regulations as the Commission may prescribe for the purpose of limiting or preventing participation by such registered . . . company on a basis different from or less advantageous than that of such other participant." 15 U.S.C. § 80a-17(d). (Memorandum, R. 48, Page ID # 903.)

Transactions subject to Section 17 of the ICA.  For example, Plaintiffs not only assert that the Lending Fees violate Section 17(d) and Section 17(e) of the ICA (Compl., R. 1, Page ID # 37-39  (¶¶ 185, 187, 190, 196, 198)), they also acknowledge that the SEC has issued an order (the "Exemptive Order") exempting the Lending Fees from Section 17(d).  (Compl., R. 1, Page ID # 36 (¶ 180).)[7]

By itself, the Exemptive Order bars the Plaintiffs' claim under Section 36(b).  As the district court correctly held below:

> Section 36(b)(4) provides that "subsection [36(b)] shall not apply to compensation or payments made in connection with transactions subject to section 80a-17 of this title, or rules, regulations, or *orders thereunder*."  15 U.S.C. § 80a-35(b)(4) (emphasis added).  As discussed above, the Commission expressly granted BFA and BTC an "order [of exemption] *under* Section 6(c) and 17(b)" of the Act from Sections 17(a) and 17(d), and thereby approved the joint transaction among BFA, BTC, and the iShares entities on terms set forth by the SEC Exemption Notice.[8]  By the plain text of Section 36(b)(4), the SEC Exemption Order removes the transaction at issue from the scope of Section 36(b).

(Memorandum, R. 48, Page ID # 896 (emphases in original).)

---

[7]  *Maxim Series Fund, Inc.*, Investment Company Act Release No. 25,878, 2002 SEC LEXIS 3327, at *3 (Dec. 27, 2002) (order under ICA §§ 6(c), 17(b)).  (App. to Defs.' Mem. of Law in Supp. of Mot. to Dismiss the Compl., R. 22-1, Page ID # 422-423 (Ex. U).)

[8]  Section 6 of the ICA grants the SEC broad discretion to issue exemptions related to provisions of the ICA.  15 U.S.C. § 80a-6.  (Memorandum, R. 48, Page ID # 896 (p. 9 n.5).)

Other courts that have considered the issue are in accord.  In *Lessler v. Little*, 857 F.2d 866 (1st Cir. 1988), the First Circuit Court of Appeals recognized that "Section 36(b)(4) . . . makes it clear that rights and remedies under section 17 and section 36(b) are intended to be mutually exclusive . . . . Since we have held that [the] complaint does state a claim under section 17(a)(2), it therefore follows that [the] complaint does not also state a claim under section 36(b)."  *Lessler*, 857 F.2d at 874.  *See also Rohrbaugh v. Inv. Co. Inst.*, No. 00-1237, 2002 U.S. Dist. LEXIS 13401, at *9 n.8 (D.D.C. July 2, 2002) (noting Section 36(b) "prohibits claims for any conduct covered by section 17").[9]  Plaintiffs cite no authority to the contrary.

## B.   The SEC Has Not Adopted Plaintiffs' Position

Plaintiffs argued below, and contend on appeal, that the SEC has issued pronouncements supporting Plaintiffs' position regarding the proper construction of Section 36(b)(4).  According to Plaintiffs, the SEC has opined that securities lending arrangements fall outside Section 17(d) of the ICA and therefore are "governed by the fiduciary standard set out in Section

---

[9]   *Lessler* and *Rohrbaugh* pre-date more recent authorities holding under *Alexander v. Sandoval*, 532 U.S. 275 (2001), that there is no private right of action under any provision of the ICA other than Section 36(b).  *See infra* pp. 29-32.  Nevertheless, both decisions construe Section 36(b)(4) as precluding any claim under Section 36(b) based on any transaction subject to Section 17.

36(b)." (Pl. Br. at 28.)  The district court properly rejected this erroneous argument, which is based almost entirely on an SEC no-action letter, *Norwest Bank Minnesota, N.A.*, SEC No-Action Letter, 1995 SEC No-Act. LEXIS 529 (May 25, 1995) ("*Norwest*"), a document that actually undermines Plaintiffs' position.

As a threshold matter, *Norwest* is not, as Plaintiffs contend, "the SEC's definitive interpretation of Sections 17 and 36(b) with respect to securities lending." (*See* Pl. Br. at 30.)  Indeed, it is a no-action letter issued by the *staff* of the SEC, *not* the Commission itself.  Thus, *Norwest*, like all other no-action letters, has "no binding authority." *N.Y.C. Emps.' Ret. Sys. v. SEC*, 45 F.3d 7, 14 (2d Cir. 1995).  *Norwest* therefore is entitled to little, if any, deference, much less the *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) ("*Chevron*"), deference mentioned in Plaintiffs' Opening Brief. (*See* Pl. Br. at 31-32.)  Indeed, the "principle of deference described in [*Chevron*] is not applicable here, for . . . the staff's no-action letter . . . [does not] rank[] as an agency adjudication or rulemaking." *Roosevelt v. E.I. DuPont de Nemours & Co.*, 958 F.2d 416, 427 n.19 (D.C. Cir. 1992) (citation omitted).

Furthermore, *Norwest* is readily distinguishable.  The staff in *Norwest* did not address the lending arrangements at issue in this case, much less

opined that they fall outside Section 17 of the ICA. Rather, the staff stated it would recommend no enforcement action with respect to a different arrangement, namely, a custody agreement authorizing the affiliate of an investment adviser (a "Custodian") to perform solely ministerial tasks in connection with a securities loan arrangement (the "Program") in exchange for a fee *not* based on the revenue generated by the loans. This fee arrangement was critical to the staff's conclusion that the Program fell outside the scope of Section 17:

> In our view, a service arrangement between a fund and an affiliated person of the fund under which compensation is *not* based on a share of the revenue generated by the service provider's efforts is *not* a "joint enterprise or other joint arrangement or profit-sharing plan" [triggering application of Section 17(d) and Rule 17d-1 promulgated thereunder]. Here, the Custodian's compensation would not be based on a share of the revenue generated by the proposed securities lending Program. We therefore conclude that the Program is outside the scope of rule 17d-1.

*Norwest*, 1995 SEC No-Act. LEXIS 529, at *12 (emphases added) (footnote omitted). Plainly, the staff's stated view in *Norwest* that '"the Custodian's compensation would be subject to Section 36(b)"' stemmed solely from its finding that the Program fell outside Section 17(d). (*Cf.* Pl. Br. at 29) (citation and emphasis omitted).

In marked contrast to the Custodian in *Norwest*, BTC acts as a full-service securities lending agent that shares with the iShares Funds a portion

of the net revenue generated by the iShares Funds' securities loans. Thus, even under the staff's reading of Section 17(d) in *Norwest*, BTC's Lending Fee is subject to Rule 17d-1, and Plaintiffs therefore have no private right of action under Section 36(b) to challenge the Lending Fee.

Plaintiffs fare no better with their attempt to suggest that the iShares Appellees previously endorsed Plaintiffs' reading of *Norwest*. (*See* Pl. Br. at 32-33.) In seeking to create that impression, Plaintiffs point to a sentence in the application BTC submitted to the SEC for exemptive relief under Section 17, which stated that "'the duties to be performed by [BTC] as lending agent with respect to any Fund will not exceed the parameters set forth in . . . [*Norwest*].'" (Pl. Br. at 33 (citation omitted).) The foregoing sentence, however, is not a concession that securities lending arrangements fall outside the scope of Section 17 or that Section 36(b) creates a private right of action to challenge the Lending Fee. The *Norwest* parameters referenced by BTC in its exemptive application were those relating to the staff's grant of no-action relief under Section 17(e) of the ICA. In *Norwest*, the staff noted it was granting such relief in light of the Custodian's representation it would take direction from and be supervised by the Funds' boards of directors and investment adviser. *See Norwest*, 1995 SEC No-Act. LEXIS 529, at *9 ("Because a Custodian would select borrowers, execute loan agreements,

15

and invest cash collateral only in accordance *with guidelines specified by the Fund's adviser and under the adviser's supervision*, we believe that these activities would present little opportunity for the types of conflicts that Section 17(e)(1) was designed to prevent." (emphasis added)).

Based on the foregoing guidance from the staff in *Norwest*, BTC's exemptive application to the SEC stated that BTC's securities lending activities would remain under the direction and supervision of the iShares Funds' directors and investment adviser, thereby avoiding any issue under Section 17(e). In this case, however, the Section 17(e) parameters are irrelevant because BTC's application sought exemptive relief from the SEC under a different provision of the ICA, namely, Section 17(d), which prohibits an investment company and its affiliates from entering into any contract or arrangement "concerning an enterprise or undertaking whereby . . . [they] have a joint or a joint and several participation, or share in the profits of such enterprise or undertaking." 17 C.F.R. § 270.17d-1(c) (2013). Thus, contrary to Plaintiffs' suggestion, nothing in Defendants' exemptive application concedes that Securities Lending Transactions fall outside Section 17(d) of the ICA, or that the SEC has opined that fund shareholders have a private right of action under Section 36(b) to challenge Section 17 Compensation.

16

**C.     Plaintiffs' New Arguments Are Meritless**

    **1.     Section 36(b)(4) Draws No Distinction Between
        Investment Advisers and Their Affiliates**

      In attempting to avoid the fatal effects of Section 36(b)(4) of the ICA,

Plaintiffs have advanced a new interpretation of the statute for the first time

on appeal.   According to Plaintiffs, Section 36(b)(4) is limited in scope,

barring only those claims that otherwise could be asserted against *affiliates*

of the funds' investment advisers, such as BTC.   Under this interpretation,

Section 36(b)(4) does not preclude Plaintiffs from suing an investment

adviser – here, BFA – on the theory that its investment advisory fee is

excessive when "taken into account" with any Section 17 Compensation

paid to its affiliate, BTC.   (Pl. Br. at 13.)   Even if Plaintiffs had not

previously waived this argument, which they did by failing to present it

below, it fails to withstand analysis and should be rejected.

      **(a)     Plaintiffs Have Waived All Arguments
           Raised for the First Time on Appeal**

      Before the district court below, Plaintiffs principally relied on the

*Norwest* no-action letter to argue that Section 17(d) of the ICA has no

application to securities lending transactions and, accordingly, Section

36(b)(4) does not bar a claim challenging the Lending Fee as excessive in

violation of Section 36(b).   (Pls.' Resp. in Opp. To Defs.' Mot. to Dismiss,

R. 37, Page ID # 486-491; Memorandum, R. 48, Page ID # 897-898.)  In an about-face, Plaintiffs now effectively concede in their Opening Brief that the Lending Fee *is* subject to Section 17(d), but argue that Section 36(b)(4) forecloses a claim solely against BTC, the Lending Agent for the iShares Funds, without foreclosing a claim against the Funds' investment adviser, BFA, on the theory that the Lending Fee renders BFA's investment advisory fee excessive.  (*See* Pl. Br. at 16.)  As a threshold matter, because Plaintiffs never presented this argument to the district court below, it is not properly before this Court on appeal.  As this Court has explained:

> In the interests of judicial economy and the finality of judgments, and mindful of our role as an appellate court, we have declined to review arguments not presented to the district court in the first instance. Therefore, since [plaintiff] failed to press its entitlement to interest under federal common law before the district court, we do not consider that argument on appeal.

*Sigmon Fuel Co. v. Tenn. Valley Auth.*, 754 F.2d 162, 164-65 (6th Cir. 1985) (citations omitted); s*ee also Dice Corp. v. Bold Techs.*, --- Fed. Appx. ----, Nos. 12-2513, 13-1712, 2014 U.S. App. LEXIS 1496, at *26 (6th Cir. Jan. 24, 2014) (finding "[t]his [was] a new argument not appropriately considered on appeal").  For this reason alone, Plaintiffs' newly minted argument regarding the scope of Section 36(b)(4) should be rejected.

### (b)     There Are No Exceptions to Section 36(b)(4)

Even if Plaintiffs' new argument were properly before this Court, it nevertheless is meritless and therefore should be rejected on that separate and independent basis.    The centerpiece of the argument is that an investment adviser may be held liable under Section 36(b) for allegedly excessive Section 17 Compensation paid to the adviser's affiliate.    This argument fails because it is contrary to the unambiguous language of Section 36(b)(4), which provides – clearly and unconditionally – that Section 36(b) does *not* apply to Section 17 Compensation.

According to Plaintiffs, Section 36(b) authorizes fund shareholders to challenge advisory fees paid to a fund's investment adviser as excessive if the Section 17 Compensation paid to the adviser's affiliate is excessive.  (Pl. Br. at 16-17.)  On its face, Section 36(b)(4) forecloses any such claim.  By its terms, the subsection bars any private action challenging Section 17 Compensation under any circumstances.  Consequently, Section 36(b)(4) could not be construed as advocated by Plaintiffs unless it were rewritten as follows: "[t]his subsection shall not apply to compensation or payments made to *affiliates of investment advisers* in connection with transactions subject to Section 17 of this title, . . . or orders thereunder, . . . *except that such compensation shall be considered by the court in any action against an*

19

*investment adviser in respect of compensation paid to the adviser pursuant to Section 15 of this title"* (added language in italics).[10]

Plaintiffs' effort to rewrite Section 36(b) fails as a matter of statutory construction.  Where, as here, the words of a statute are clear, they can neither be ignored nor rewritten.  *See Carroll v. United States*, 174 F.2d 412, 414 (6th Cir. 1949).  Plaintiffs' attempt to do so in this case should be rejected, and Section 36(b)(4) should be construed and enforced in accordance with its plain terms, *i.e.*, fund shareholders are barred from suing investment advisers or their affiliates under Section 36(b) with respect to Section 17 Compensation.

### (c)    Plaintiffs' Construction of Section 36(b)(4) Also Is Foreclosed by Section 36(b)(3)

Another fatal flaw in Plaintiffs' construction of Section 36(b)(4) is that it is undermined by Section 36(b)(3), which provides in pertinent part as follows:

> No such action shall be brought or maintained against any person other than *the recipient of such compensation or*

---

[10]    Investment advisory contracts and the compensation paid to investment advisers pursuant to those contracts are governed by Section 15 of the ICA.  *See Krinsk v. Fund Asset Mgmt., Inc.*, 875 F.2d 404, 413 (2d Cir. 1989).  Thus, as a matter of law, Section 17 Compensation paid to BTC or BFA pursuant to the Lending Agreements cannot properly be deemed advisory compensation paid to BFA under an advisory contract governed by Section 15.  *Id.*

20

*payments*, and no damages or other relief shall be granted against any person other than *the recipient of such compensation or payments*.

15 U.S.C. § 80a-35(b)(3) (emphases added).  On its face, this provision bars any action against BFA based on Section 17 Compensation paid to BTC.  As reflected in the language of this provision:

> 'Congress took great pains to specify who may be held liable and from whom damages may be recovered under section 36(b), . . . [and] [v]irtually all courts to consider the matter have recognized that proper defendants under Section 36(b) of the [ICA] are limited to those that can be found to be the recipient of [ ] compensation or payments.'

*Zucker v. Federated S'holder Servs. Co.*, No. 2:06cv241, 2007 U.S. Dist. LEXIS 15186, at *4-5 (W.D. Pa. Mar. 5, 2007) (alteration in original) (citations omitted).  Thus, Plaintiffs' contention that BFA may be held liable for an allegedly excessive Lending Fee paid to BTC is foreclosed by Section 36(b)(3).  *See In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 238 (S.D.N.Y. 2005) (Section 36(b)(3) "excludes claims that are brought against investment advisers for alleged breaches of fiduciary duties that indirectly resulted in higher fees for the investment advisers"), *aff'd*, 481 F.3d 110 (2d Cir. 2007).

### (d)    Fees May Not Be Aggregated Under Section 36(b)

There also is no merit to Plaintiffs' related argument that an investment adviser may be held liable under Section 36(b) for "the total sum

21

of compensation paid to it and all of its affiliates." (Pl. Br. at 14.)  In *Meyer v. Oppenheimer Management Corp.*, 895 F.2d 861 (2d Cir. 1990), for example, plaintiffs advanced a similar contention with respect to distribution fees paid to an affiliate of an investment adviser pursuant to Rule 12b-1 promulgated by the SEC under the ICA.  The Second Circuit Court of Appeals squarely rejected the argument, similar to the one made by Plaintiffs here, that "12b-1 payments to an [investment] adviser's affiliates are to be aggregated with [the adviser's] advisory fees to determine the merits of a Section 36(b) claim." *Id*. at 866.  As explained by the court:

> The two kinds of payments are for entirely different services, namely advice on the one hand and sales and distribution on the other.  If the fee for each service viewed separately is not excessive in relation to the service rendered, then the sum of the two is also permissible.

*Id.; accord, Levy v. Alliance Capital Mgmt. L.P.*, No. 98-9528, 1999 U.S. App. LEXIS 20213, at *4-5 (2d Cir. Aug. 20, 1999); *In re Goldman Sachs Mut. Funds Fee Litig.*, 04 Civ. 2567, 2006 U.S. Dist. LEXIS 1542, at *33 (S.D.N.Y. Jan. 13, 2006).

In this case, BTC's Lending Fee and BFA's advisory fee were paid by the iShares Funds in exchange for entirely different services rendered by BTC and BFA, respectively.  Thus, each fee must be considered separately

under Section 36(b), and Plaintiffs' aggregation argument is meritless. *Meyer*, 895 F.2d at 866.

### (e)    The Complaint Alleges No Section 36(b) Claim Directed at BFA's Advisory Fee

Plaintiffs' new found focus on BFA's Advisory Fee also is unavailing for another separate and dispositive reason: the only compensation challenged by Plaintiffs in the Complaint is the Lending Fee. There is no claim directed at BFA's advisory fee alleging that it is excessive in violation of Section 36(b). (*See, e.g.*, Compl., R. 1, Page ID # 2, 17-19, 21-22, 24, 26-28, 30-34 (¶¶ 1, 4, 64, 70, 73, 86-87, 92, 97, 110, 116-122, 139, 144, 147, 152, 158, 161, 166).) Thus, even if Plaintiffs' "fee aggregation" theory were viable, which it is not, it does not and cannot salvage the Complaint given that it nowhere alleges that BFA's advisory fee is excessive when BTC's Lending Fee is "taken into account."

### 2.    There is No Legislative History Supporting Plaintiffs' Construction of Section 36(b)(4)

In their brief, Plaintiffs point to Congressional testimony of a former Chairman of the SEC, Hamer H. Budge, as "legislative history" purportedly supporting their construction of Section 36(b)(4). (*See* Pl. Br. at 18-19.) Plaintiffs even criticize the district court for "fail[ing] to . . . take into account the pertinent legislative history" in dismissing their Complaint (*id.*

23

at 10), even though Plaintiffs barely mentioned it below, relegating it to a footnote in their opposition brief. (Pls.' Resp. in Opp. to Defs.' Motions to Dismiss, R. 37, Page ID # 490 (p. 12 n.11).) In any event, Plaintiffs' reliance on legislative history is misplaced for several reasons.

First, it is well-settled that "'[r]esort to legislative history is only justified where the face of the Act is inescapably ambiguous.'" *Schmitt v. City of Detroit*, 395 F.3d 327, 330 n.2 (6th Cir. 2005) (quoting *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 395 (1951)); *accord Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) ("[T]he authoritative statement is the statutory text, not the legislative history or any other extrinsic material."). Here, Plaintiffs do not even attempt to demonstrate any ambiguity in Section 36(b)(4) of the ICA. While they note that resort to legislative history would be appropriate "[t]o the extent Section 36(b)(4) can be viewed as ambiguous" (Pl. Br. at 18), they identify no ambiguity and there is none. As shown above, the language of Section 36(b)(4) is clear and unambiguous, providing without exception that there is no private right of action under Section 36(b) with respect to Section 17 Compensation. Consequently, legislative history is irrelevant in this case.

Furthermore, even if a review of legislative history were appropriate, it would have no impact here. The only such "history" identified by

Plaintiffs in their Opening Brief is a statement made to Congress by former SEC Chairman Budge that affiliate compensation may be "'taken into account by a court in determining whether . . . advisory fees meet the standards of Section 36(b).'" (*See* Pl. Br. at 18-19 (citation omitted).) This statement, however, has little, if any, bearing on the meaning of Section 36(b)(4). Indeed, the Supreme Court has "decline[d] to accord any significance" to Congressional hearing testimony. *Kelly v. Robinson*, 479 U.S. 36, 50 n.13 (1986); *see also Publ. Citizen v. Farm Credit Admin.*, 938 F.2d 290, 292 (D.C. Cir. 1991) ("[T]he testimony of witnesses before congressional committees prior to passage of legislation is generally weak evidence of legislative intent . . . ."). In addition, a single statement of one individual – or even a Congressional committee – cannot supplant the language of the statute where, as here, that language is clear. As this Court has explained:

> [W]here a House committee's explanation of the meaning of a statute seems to differ from the statute's actual wording, this Court should not rely on that committee's statement as the exclusive explanation for the meaning of the statute . . . . In this case, the parties have not pointed to any further legislative history, other than the one statement from the report of the House Judiciary Committee, as proof of Congress' intent with respect to the scope of the civil enforcement provision.

> [Where the language of the statute is clear,] [w]e . . . need not – and ought not – consult an isolated statement in a committee report.

*Moses v. Providence Hosp. & Med. Ctrs., Inc.*, 561 F.3d 573, 581 (6th Cir. 2009) (citing *United States v. Choice*, 201 F.3d 837, 840 (6th Cir. 2000) ("The language of the statute is the starting point for interpretation, and it should also be the ending point if the plain meaning of that language is clear.")).

Here, the statement made by Chairman Budge not only conflicts with the plain language of Section 36(b), it also has been rejected by the courts in construing the statute. *See supra* pp. 21-23. Moreover, the statement is beside the point in all events because, as noted above, the Complaint does not challenge the propriety of BFA's advisory fees. *See supra* p. 23.

## D.    There Is Nothing Irrational About the District Court's Construction of Section 36(b)(4)

In their Opening Brief, Plaintiffs contend that the district court's construction of Section 36(b)(4) "results in irrational outcomes," an argument based principally on the erroneous premise that the district court "lump[ed] together investment adviser contracts with all affiliate transactions implicating Section 17." (Pl. Br. at 26.) The district court did no such thing. Indeed, in the proceedings below, Plaintiffs did not challenge BFA's investment adviser contracts with the iShares Funds. Rather, the only issue before the district court – and the only issue raised by the Complaint – was whether the Lending Fees paid to BTC pursuant to the Lending

26

Agreements violate Section 36(b).  Consequently, contrary to Plaintiffs'
contention on appeal, the district court's construction of Section 36(b)(4)
does not address the application of Section 36(b) to investment advisory
contracts, much less "render[s] a substantial portion of the text of Section
36(b) surplusage."  (Pl. Br. at 27.)

In the same vein, the district court's Decision neither "eliminates" the
"mechanism" chosen by Congress for questioning compensation paid to
affiliates of investment advisers (Pl. Br. at 27), nor "remove[s] most affiliate
compensation from the purview of Section 36(b)."  (Pl. Br. at 12.)  The
remedial scheme created by the ICA is a two-edged sword:  it "expressly
provides for private rights of action only for specific, narrowly defined
offenses, and specifies SEC enforcement for [all] other offenses."  *Smith v.
Oppenheimer Funds Distributor, Inc.*, 824 F. Supp. 2d 511, 518 (S.D.N.Y.
2011).  Under this statutory scheme, the "mechanism" chosen by Congress
for questioning all affiliate compensation – other than Section 17
Compensation – is Section 36(b) of the ICA, which authorizes the SEC and
fund shareholders to bring an action challenging such compensation (without
regard to advisory compensation paid to investment advisers under Section
15 of the ICA).  *See, e.g.*, *Meyer*, 895 F.2d at 866 (finding that Rule 12b-1
fees paid to affiliates of investment adviser are subject to challenge under

Section 36(b)); *Eaton Vance*, 380 F. Supp. 2d at 236-37 (same).  Nothing in the district court's decision eliminates this mechanism under Section 36(b).

Under the same statutory scheme, the "chosen mechanism" for regulating and challenging Section 17 Compensation is SEC regulation and enforcement pursuant to Section 17(d) of the ICA.  As noted above, Section 17 Compensation is flatly prohibited under Section 17(d) unless authorized on a case-by-case basis pursuant to an exemptive order issued by the SEC. Consistent with the oversight role expressly delegated by Congress to the Commission, Section 36(b)(4) prohibits private rights of action challenging Section 17 Compensation authorized pursuant to an exemptive order of the SEC.  Once that order has been issued, the SEC plainly is in the best position to monitor compliance with the order and to seek to hold fund affiliates liable for any lapses in compliance.  *See, e.g.*, *In re Securities Corp. Gen.*, Investment Company Act Release No. 3014, 1960 SEC LEXIS 531 (April 12, 1960) (notice and order for hearing to determine whether exemptive order issued by the Commission under Section 17 of the ICA should be revoked).  Thus, contrary to Plaintiffs' suggestion, the district court's Decision neither leaves Section 17 Compensation unregulated nor removes most affiliate compensation from the purview of Section 36(b).

## II.    THERE IS NO PRIVATE RIGHT OF ACTION UNDER SECTION 36(a)

Count III of the Complaint alleges that Defendants are liable under Section 36(a) of the ICA for approving the compensation paid in connection with Securities Lending Transactions.  (Compl., R. 1, Page ID # 43 (¶ 220).)  There is, however, no private right of action under Section 36(a), and the district court properly dismissed Count III.

### A.    *Sandoval* and its Progeny Foreclose a Private Right of Action Under Section 36(a)

In *Alexander v. Sandoval*, the Supreme Court set forth the factors to be considered when determining whether a federal statute creates a private right of action.  532 U.S. 275 (2001).  In that case, the Court held that the most important factor is the "text and structure" of the statute.  *Id.* at 288.  In particular, it is "critical" to determine whether the statutory provision at issue contains express "'rights-creating' language."  *Id.* (citation omitted).  Thus, "[f]or a statute to create such private rights, its text must be 'phrased in terms of the persons benefited.'"  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002) (citation omitted).  Statutes focusing "on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'"  *Sandoval*, 532 U.S. at 289 (citation omitted).    Unless the statutory language expressly creates

29

substantive rights on behalf of a particular class of persons in "clear and unambiguous terms," *Gonzaga*, 536 U.S. at 290, no private right of action exists, and "courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Sandoval*, 532 U.S. at 286-87.

This Court recently applied *Sandoval* in *MIK v. Fed. Home Loan Mortg. Corp.*, --- F.3d ----, No. 12-6051, 2014 U.S. App. LEXIS 2332 (6th Cir. Feb. 7, 2014). There, the plaintiff tenants sued the Federal Home Loan Mortgage Corporation under Section 702 of the Protecting Tenants at Foreclosure Act of 2009 ("PTFA"), part of the Troubled Assets Relief Program ("TARP"), claiming they were unlawfully evicted from their rental home following a foreclosure sale. *Id.*, at *1. While PTFA protects tenants residing in properties subject to foreclosure, Section 702 contains no express language creating a private right of action for violations of the section. *See id.*, at *8.

This Court rejected the argument that tenants have a private right of action, reasoning in part that the statute focused on regulating the conduct of the successors in interest to foreclosed properties, *not* the persons benefited by the statute, *i.e.*, the tenants. *See id.*, at *11. This Court also looked at "the statutory structure" of TARP and PTFA, concluding that it "does not

demonstrate an intent to create a private right of action." *Id.*, at \*18. In that connection, this Court found it significant that "Congress provided a private right of action [under the statute] against the Secretary [of the Treasury] for those harmed by the Secretary's actions, but it did not provide a private right of action against individuals or non-governmental entities who violate TARP's provisions." *Id.*, at \*19. This structure demonstrated that Congress did not intend to create a right of action for the plaintiff tenants given that "'[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'" *Id.* (quoting *Sandoval*, 532 U.S. at 290).

In cases involving claims under Section 36(a) of the ICA, courts have employed the analysis of *Sandoval* and *MIK* to conclude there is no private right of action under that section. This portion of the statute provides that the SEC "is authorized to bring an action" for "breach of fiduciary duty involving personal misconduct" against an officer, director, board member or investment adviser of a registered investment company. 15 U.S.C. § 80a-35(a). Because the ICA nowhere "explicitly provides a private right of action for violations of [Section 36(a)]," there is a "presumption that Congress did not intend one." *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007). This presumption "is buttressed by three additional

features of the ICA." *Id*.  First, Section 42 expressly authorizes the SEC to enforce all of the provisions of the ICA, which "'suggests that Congress intended to preclude other[]'" methods of enforcing Section 36(a).  *Id*. (citation omitted).  Second, "'Congress's explicit provision of a private right of action to enforce one section of [the] statute,'" namely, Section 36(b), "'suggests that omission of any explicit private right to enforce other sections [including Section 36(a)] was intentional.'"  *Id*. (citation omitted). Finally, the language of Section 36(a) "'focus[es] on the person *regulated* rather than the individuals *protected*'"; it therefore "create[s] no implication of an intent to confer rights on a particular class of persons.'"  *Id.* (emphases added) (quoting *Sandoval*, 532 U.S. at 289).

## B.     Plaintiffs' Authorities Are No Longer Good Law or Are Distinguishable

According to Plaintiffs "[t]he majority of the Court of Appeals that have considered the issue have recognized implied private rights of action under the [ICA]."  (Pl. Br. at 38.)  But all of the cases Plaintiffs cite for this proposition were decided prior to *Sandoval*.  They therefore are no longer good law as reflected by the "modern trend" after *Sandoval*, which "has been for federal courts to deny the existence of implied private rights of action under the ICA" in general, *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 615 F.3d 1106, 1122 (9th Cir. 2010), and to find no private right of

action under Section 36(a) of the ICA in particular. *See, e.g.*, *Bellikoff*, 481 F.3d at 116-17; *Wiener v. Eaton Vance Distribs., Inc.*, No. 10-10515-DPW, 2011 U.S. Dist. LEXIS 38375, at *40-42, at *11-13 (D. Mass. Mar. 30, 2011); *Oppenheimer Funds*, 824 F. Supp. 2d at 519-20; *Alexander v. Allianz Dresdner Asset Mgmt. of Am. Holding, Inc.*, 509 F. Supp. 2d 190, 194-95 (D. Conn. 2007); *Boyce v. AIM Mgmt. Group, Inc.*, No. H-04-2587, 2006 U.S. Dist. LEXIS 71062, at *9-10 (S.D. Tex. Sept. 29, 2006); *In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*, 434 F. Supp. 2d 233, 239-40 (S.D.N.Y. 2006); *Forsythe v. Sun Life Financial, Inc.*, 417 F. Supp. 2d 100, 107 n.11 (D. Mass. 2006); *Hamilton v. Allen,* 396 F. Supp. 2d 545, 558-59 (E.D. Pa. 2005).

*Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11 (1979) ("*TAMA*"), is not to the contrary, and Plaintiffs' reliance on it is misplaced. (*See* Pl. Br. at 36-37.) In that case, the Supreme Court implied a private right of action under Section 215 of the Investment Advisers Act of 1940. 444 U.S. at 18-20. Post-*Sandoval*, every court squarely addressing the issue has distinguished *TAMA* and held that there is no private right of action under the ICA. *See, e.g.*, *Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*, 677 F.3d 178, 185-87 (3d Cir.), *cert. denied*, 133 S. Ct. 529 (2012); *Smith v. Oppenheimer Funds*, 824 F. Supp.

2d at 517-18; *Smith v. Franklin/Templeton Distribs., Inc.*, No. C 09-4775 PJH, 2010 U.S. Dist. LEXIS 112934, at *3-4 & n.1 (N.D. Cal. Oct. 22, 2010).

**C.    Plaintiffs' New Arguments on Appeal Are Meritless**

As for Plaintiffs' other arguments regarding Section 36(a), they were not presented to the district court below and have been raised by Plaintiffs for the first time on appeal.  Even if these arguments are properly before this Court, which they are not (*see supra* pp. 17-18), they are meritless and should be rejected.

According to Plaintiffs, Congressional intent to create a private right of action under Section 36(a) is found in Section 44 of the ICA, a provision stating that the federal district courts have jurisdiction over '"all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of'" the ICA.  (Pl. Br. at 36 (citation omitted).) This argument is a non sequitur given that a provision creating jurisdiction over actions authorized by Congress to remedy violations of the ICA does not establish which actions are authorized by the statute. As the Supreme Court has held, the "source of plaintiffs' rights [of action] must be found, if at all, in the substantive provisions of the [act] which they seek to enforce, *not* in the jurisdictional provision." *Touche Ross & Co. v. Redington*, 442

U.S. 560, 577 (1979) (emphasis added); *accord Northstar*, 615 F.3d at 1117-18 (holding that Section 44 of the ICA does not create a private right of action under Section 13(a) of the statute).

Plaintiffs fare no better with the argument that a private right of action under Section 36(a) should be implied because a House Committee report accompanying the 1980 amendments to the ICA states that the Committee "'expects the courts to imply private rights of action under this legislation.'" (Pl. Br. at 42 (citation omitted).)  Reliance on legislative history would be inappropriate in light of (a) *Sandoval*'s holding that the determination of whether a private right of action exists "is governed by the statutory text," *see Davis v. Bailey*, No. 05-cv-0042-WYD-OES, 2005 U.S. Dist. LEXIS 38204, at *13 (D. Colo. Dec. 22, 2005), and (b) the settled rule of statutory construction that where, as here, a statute is unambiguous, "'the authoritative statement is the statutory text, not the legislative history or any other extrinsic material.'"  *Id.*, at *14 (citation omitted).  Applying these principles, the court in *Davis* held that the same legislative history cited by Plaintiffs here does not establish a private right of action under Section 36(a), reasoning:

> In the case at hand, I find that the statute is not ambiguous.  §
> 36(a) states that the SEC is the only entity that has authority to
> commence an action under its provisions.  It does not create a
> private right of action to any other parties.  Therefor I cannot

35

> rely on the legislative history or any other extrinsic materials to
> imply such a right.

*Id.*; *accord Jacobs v. Bremner*, 378 F. Supp. 2d 861, 865 (N.D. Ill. 2005) ("[E]ven affirmative statements of specific intent in congressional committee reports are impotent in the face of unambiguous statutory language.").

Reliance on the legislative history cited by Plaintiffs also is inappropriate for another separate and independent reason: it is a House Report from 1980 that post-dates enactment of Section 36(a). It therefore is not "legislative history" of Section 36(a). Rather, it is "[p]ost-enactment legislative history (a contradiction in terms) [which] is not a legitimate tool of statutory interpretation." *Bruesewitz v. Wyeth LLC*, 131 S. Ct. 1068, 1081 (2011). Accordingly, the House Report does not alter the conclusion that there is no private right of action under Section 36(a).

## CONCLUSION

For the reasons stated above, the Judgment should be affirmed in all respects.

Dated:  March 17, 2014                    Respectfully submitted,


/s/ Seth M. Schwartz_____        /s/ John R. Jacobson_____
Seth M. Schwartz                           John R. Jacobson
Jeremy A. Berman                           Milton S. McGee, III
**SKADDEN, ARPS, SLATE,**                  **RILEY WARNOCK &**
  **MEAGHER & FLOM LLP**                     **JACOBSON, PLC**
Four Times Square                          1906 West End Avenue
New York, NY 10036-6522                    Nashville, TN 37203
Tel: (212) 735-3000                        Tel: (615) 320-3700
E-mail: Seth.Schwartz@skadden.com          E-mail: jjacobson@rwjplc.com
        Jeremy.Berman@skadden.com                  tmcgee@rwjplc.com


Attorneys for Appellees
iShares Trust; iShares, Inc., iShares Russell Midcap Index Fund; iShares MSCI EAFE Index Fund; iShares MSCI Emerging Markets Index Fund; iShares Russell 2000 Growth Index Fund; iShares Russell 2000 Value Index Fund; iShares Core S&P Mid Cap Index Fund; iShares Core S&P Small-Cap Index Fund; iShares Dow Jones US Real Estate Index Fund; Blackrock Fund Advisors; Blackrock Institutional Trust Company, N.A.; Robert S. Kapito; and Michael Latham

/s/  Bruce H. Schneider
Bruce H. Schneider
**STROOCK & STROOCK &**
  **LAVAN LLP**
180 Maiden Lane
New York, NY  10038
Tel: (212) 806-5400
E-mail:  bschneider@stroock.com

Attorneys for Appellees
Robert H. Silver, George G.C.
Parker, John E. Martinez,
Cecilia H. Herbert, Charles
Hurty, John Kerrigan, and
Madhav V. Rajan

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7)(C), I hereby certify that the foregoing brief was prepared in Microsoft Word with 14-point Times New Roman, a proportionally-spaced typeface.  The brief contains a total of 8,584 words, as calculated by my word processing software, excluding the statements and other materials specified in Fed. R. App. P. 32(a)(7)(B)(iii).

<u>/s/  Jeremy A. Berman</u>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 17, 2014 a copy of this brief was served on counsel of record for all parties through the Court's CM/ECF.


/s/  Jeremy A. Berman_____

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Case No. 3:13-cv-00046

| DESCRIPTION OF ENTRY | DATE | RECORD NUMBER | PAGE ID # RANGE |
|---|---|---|---|
| Verified Complaint | 1/18/2013 | 1 | 1-70 |
| Motion of Defendants iShares Trust, iShares, Inc., the ETF Defendants., Blackrock Fund Advisors, Blackrock Inst. Trust Co., N.A., Robert S. Kapito and Michael Latham to Dismiss the Complaint | 3/11/2013 | 21 | 113-116 |
| Defendants' Memorandum of Law in Support of Motion to Dismiss | 3/11/2013 | 22 | 117-143 |
| Appendix to Defendants' Memorandum of Law in Support of Motion to Dismiss, Exhibit T | 3/11/2013 | 22-1 | 416-421 |
| Appendix to Defendants' Memorandum of Law in Support of Motion to Dismiss, Exhibit U | 3/11/2013 | 22-1 | 422-423 |
| Director-Defendants' Motion to Dismiss | 3/12/2013 | 24 | 426-428 |
| Plaintiffs' Response to Defendants' Motions to Dismiss | 3/28/2013 | 37 | 472-607 |
| Memorandum Opinion | 8/28/2013 | 48 | 888-907 |
| Order Granting Motions to Dismiss | 8/28/2013 | 49 | 908-909 |
| Order of Dismissal with Prejudice | 10/24/2013 | 54 | 920 |
| Plaintiffs' Notice of Appeal | 11/8/2013 | 55 | 921-923 |