COA Case No. 13-6486
_____

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Laborers' Local 265 Pension Fund and
Plumbers and Pipefitters Local No. 572 Pension Fund,
*Plaintiffs-Appellants*,

v.

iShares Trust, *et al*.,
*Defendants-Appellees*.
_____

REPLY BRIEF OF APPELLANTS
_____

On Appeal from the United States District Court
for the Middle District of Tennessee
Case No. 3:13-cv-00046

**BRANSTETTER, STRANCH
  & JENNINGS, PLLC**
James G. Stranch, III
J. Gerard Stranch IV
Michael G. Stewart
Michael J. Wall
227 Second Avenue North
Nashville, TN 37201
Tel: (615) 254-8801

**THE PICKRELL LAW GROUP,
  P.C.**
C. Mark Pickrell
William G. Brown
Andrew E. Hill
5701 Old Harding Pike
Suite 200
Nashville, TN 37205
Tel: (615) 352-9588

**ROBBINS ARROYO LLP**
Brian J. Robbins
Craig W. Smith
Jenny L. Dixon
600 B. Street, Suite 1900
San Diego, CA 92101
Tel:  (619) 525-3990

*Attorneys for Appellants*

# TABLE OF CONTENTS

ARGUMENT ..................................................................................................1

I.    PLAINTIFFS STATED A CLAIM UNDER SECTION 36(b) .........................1

    A.    Plaintiffs Specifically Challenged BFA's and BTC's Advisory Fees
        in the District Court ...................................................................3

        1.    Allegations in the Complaint ...............................................3

        2.    Arguments Raised Below ..................................................5

    B.    Application of Section 36(b) ........................................................6

        1.    Legislative History, Including Testimony from the Architect
            of Section 36(b), Confirms Plaintiffs' Reading ..................6

        2.    The Remedial Language in Section 36(b) ........................10

        3.    Subsection 36(b)(4) and Subsection 36(b)(3)...................11

        4.    Canons of Statutory Interpretation ..................................13

        5.    *Northwest Bank* ..............................................................17

II.    PLAINTIFFS STATED A CLAIM UNDER SECTION 36(a) .......................20

CONCLUSION ..............................................................................................21

CERTIFICATE OF COMPLIANCE............................................................25

CERTIFICATE OF SERVICE .....................................................................25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alexander v. Sandoval,*
    532 U.S. 275 (2001)........................................................................20

*Aluminum Co. of America v. Central Lincoln Peoples' Utility Dist.,*
    467 U.S. 380 (1984)..........................................................................9

*Arnold v. Ben Kanowsky, Inc.,*
    361 U.S. 388 (1960)........................................................................14

*Astoria Fed. Sav. & Loan Ass'n v. Solimino,*
    501 U.S. 104 (1991)........................................................................14

*Cobb v. Contract Transport, Inc.,*
    452 F.3d 543 (6th Cir. 2006)..........................................................14

*Dewsnup v. Timm,*
    502 U.S. 410 (1992)........................................................................14

*Fogel v. Chestnutt,*
    668 F.2d 100 (2d Cir. 1981).....................................................6, 13

*Jones v. Harris Assocs. L.P.,*
    559 U.S. 335 (2010)..................................................................6, 13

*Lessler v. Little,*
    857 F.2d 866 (1st Cir. 1988).......................................................6, 7

*Miller v. Youakim,*
    440 U.S. 125 (1979)..........................................................................9

*Montclair v. Ramsdell,*
    107 U.S. 147 (1883)........................................................................14

*Public Citizen v. United States Dep't Justice,*
    491 U.S. 440 (1989)........................................................................14

*Rohrbaugh v. Inv. Co. Inst.*,
    No. 00-1237, 2002 U.S. Dist. LEXIS 13401 (D.D.C. July 2, 2002)..............7

*Tcherepnin v. Knight*,
    389 U.S. 332 (1967).....................................................................................14

*Transamerica Mortg. Advisors, Inc. v. Lewis*,
    444 U.S. 11 (1979)..................................................................................20, 21

## FEDERAL STATUTES

15 U.S.C. § 80a-17...............................................................................................11

15 U.S.C. § 80a-35(b) .................................................................................1, 4, 10

15 U.S.C. § 80a-35(b)(3) ............................................................1, 12, 15, 16, 17

15 U.S.C. § 80a-35(b)(4) ..............................................................................11, 16

15 U.S.C. § 80a-43..........................................................................................20, 21

## FEDERAL RULES

Fed. R. App. P. 32(a)(7)(B)(iii) ........................................................................25

Fed. R. App. P. 32(a)(7)(C) ...............................................................................25

Fed. R. Civ. P. 12(b)(6) ..................................................................................1, 11

## FEDERAL REGULATIONS AND AGENCY MATERIALS

17 C.F.R. § 270.17d-1(c)................................................................................5, 16

*In re Norwest Bank Minnesota, N.A. and Society National Bank*,
    1995 SEC No-Act. LEXIS 529 (May 25, 1995) ...............................17, 18, 19

## MISCELLANEOUS

S. Rep. No. 91-184 (1969) ...........................................................................8

*Mutual Fund Amendments: Hearings Before the Subcomm. on Commerce and Finance of the H. Comm. on Interstate and Foreign Commerce on H.R. 11995, S. 2224, H.R. 13754, and H.R. 14737*, 91st Cong. (1969) ................................................................................................2, 7, 8

Richard W. Jennings & Harold Marsh, Jr., *Securities Regulation: Cases and Materials* (4th ed. 1977) ..........................................................................6

**ARGUMENT**

## I.    PLAINTIFFS STATED A CLAIM UNDER SECTION 36(b)

Section 36(b) of the Investment Company Act imposes a fiduciary duty on investment advisers for "compensation or payments" made by investment companies, or out of fund assets, to the investment adviser or its affiliates.  15 U.S.C. § 80a-35(b).  The investment adviser is liable for the "actual damages resulting from the breach of fiduciary duty," and the recovery is limited to the compensation or payments received by the adviser up to one year prior to the filing of a Section 36(b) action against the investment adviser.  *Id*. § 80a-35(b)(3).

In this case, Plaintiffs, investors in several iShares funds, sued BlackRock Fund Advisors ("BFA") and BlackRock Institutional Trust Company, N.A ("BTC") under Section 36(b) for grossly excessive compensation paid to them and their affiliates out of the profits of BlackRock's securities-lending operation.  As described by one commentator in *The Wall Street Journal*, fund managers like BFA and BTC are getting "money for nothing" by taking large percentages of securities-lending profits.  *See* (R. 1, Complaint, 21 (¶ 83).)[1]

The district court dismissed Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6), based on subsection 36(b)(4) of the Act.  The district court's

---

[1] Citations to the record are to the "Page ID" number in the electronic district-court record.

interpretation of subsection 36(b)(4), and its resulting dismissal of Plaintiffs'

claims against the investment advisers, was erroneous as a matter of law.

In their brief on appeal, the Appellees contend that Plaintiffs have not

asserted any claims against the investment advisers and that Plaintiffs' legal

arguments on appeal are "newly minted." As shown below, this characterization of

the proceedings in the district court is demonstrably incorrect.

The primary legal issue in this case remains the proper application of

Section 36(b) to grossly excessive advisory fees paid to the iShares investment

advisers, BFA and BTC, out of the proceeds of iShares' securities-lending

operations. Application of the Act to this situation requires an interpretation of

subsection 36(b)(4) in conjunction with the rest of the statutory language in

Section 36(b). The operative language in Section 36(b) is found in the first

sentence, and the remedial language of the statute is found primarily in subsection

36(b)(3).

The architect of Section 36(b), SEC Chairman Hamer H. Budge, explained

to Congress how subsection 36(b)(4) was drafted to operate within the overall of

structure of the statute. He emphasized that, when an investment adviser's

affiliate's compensation is excessive, subsection 36(b)(4) prevents a cause of

action directly against the affiliate but preserves a cause of action against the

investment adviser for breach of its fiduciary duty in overcompensating affiliates.[2]

Under Chairman Budge's interpretation of subsection 36(b)(4), Plaintiffs' breach of

fiduciary duty claims against BFA and BTC, as investment advisers, are entirely

appropriate.  The Appellees tellingly do not suggest that there is an alternative

meaning to Chairman Budge's statements, which directly contradict their

interpretation of the statute.  The Appellees simply demand that this Court

disregard the interpretation of the Act's chief regulator, who directly negotiated the

terms of subsection 36(b)(4) with industry representatives.

When this Court looks at subsection 36(b)(4) in the context of the entire

statute and its subsequent treatment by the SEC, the Court should adopt Chairman

Budge's interpretation and reverse the district court's dismissal of Plaintiffs'

Section 36(b) claims against BFA and BTC.

**A.    Plaintiffs Specifically Challenged BFA's and BTC's Advisory fees
        in the District Court**

**1.    Allegations in the Complaint**

In their brief, the Appellees assert, "[T]he only compensation challenged by

Plaintiffs in the Complaint is the Lending Fee.  There is no claim directed at BFA's

advisory fee alleging that it is excessive in violation of Section 36(b)."  (Brief of

the Appellees at 23.)  To the contrary, from the very beginning of this case,

---

[2] *Mutual Fund Amendments: Hearings Before the Subcomm. on Commerce and Finance of the H. Comm. on Interstate and Foreign Commerce on H.R. 11995, S. 2224, H.R. 13754, and H.R. 14737*, 91st Cong. 177-78 (1969).

Plaintiffs have attacked the overall excessive compensation, including securities lending fees and advisory contract fees, paid to iShares' investment advisers, BFA and BTC. The investment advisers' grossly excessive fees were, are, and should continue to be, the primary focus of this case.

Plaintiffs' Complaint includes specific allegations of BFA's and BTC's receipt of excessive fees:

> [A]s described below, iShares, the Funds and the Defendant Directors have diverted securities lending revenues to affiliates such as BTC and BFA through payment of grossly excessive fees far beyond what would be negotiated in arm's length transactions with unaffiliated entities. The Defendant Directors have breached their fiduciary duty to iShares investors when approving such excessive fees, and BFA and BTC have breached their respective fiduciary duties when taking those same fees.

(R. 1, Complaint, 17 (¶ 64).)

Plaintiffs alleged that BFA has Investment Advisory Agreements with the iShares entities, under which BFA receives an annual management fee calculated as a percentage of the average daily net assets of each fund issued by iShares. (*Id*., 6 (¶ 17).) Plaintiffs specifically alleged BFA's and BTC's status as investment advisers under the Act. (*Id*., 26 (¶¶ 112, 113).) Plaintiffs further alleged, "Section 36(b) of the Act expressly makes BTC and BFA fiduciaries to iShares investors with respect to the receipt of compensation for services or for payments of a material nature paid by iShares." (*Id*., 27 (¶ 115) (citing 15 U.S.C. § 80a-35(b)).)

Plaintiffs' allegations of excessive compensation encompassed all types of compensation. The Section 36(b) count alleges:

> This count is asserted against Defendants BTC and BFA as the primary recipients of compensation for services and payments of a material nature, *including* fees for securities lending services provided and fees for investing collateral provided by borrowers of securities.

(*Id*., 26 (¶ 110) (emphasis added).); *see also* (*id*., 35 (¶ 173) (alleging that Investment Advisory Agreements, Amended and Restated Securities Lending Agency Agreement, and "any other agreements" to pay BTC, BFA, or affiliates securities lending fees are in violation of the Act).)

### 2. Arguments Raised Below

The Appellees assert that Plaintiffs "never presented" their arguments "regarding the scope of Section 36(b)(4)" or that "BFA's investment advisory fee [is] excessive" to the district court. (Brief of the Appellees at 18.)

In their opposition to the motion to dismiss below, however, Plaintiffs asserted that "Defendants have engaged in a scheme to siphon off millions of dollars from exchange traded funds ('ETFs') owned by Plaintiffs and other shareholders by charging grossly excessive fees." (R. 37, Plaintiffs' Response in Opposition to Defendants' Motions to Dismiss, 479.) Plaintiffs argued, "Section 36(b) would apply to the compensation of the investment advisor – in this case, BFA." (*Id*. at 486.) Plaintiffs further argued that SEC Rule 17d-1(c), 17 C.F.R. §

270.17d-1(c), specifically removes investment advisory contracts from the ambit of

Section 17 and places adviser compensation under Section 36(b). (*Id*. at 489-90.)

Finally, Plaintiffs cited SEC Chairman Budge's testimony regarding the meaning

of subsection 36(b)(4) for the legal proposition that "compensation paid to an

investment adviser and affiliates remains subject to Section 36(b), even when there

are related Section 17 transactions." (*Id*. at 490 n.11.)

## B.     Application of Section 36(b)

### 1.     Legislative History, Including Testimony from the Architect of Section 36(b), Confirms Plaintiffs' Reading

As the United States Supreme Court recently observed, "the meaning of §

36(b)'s reference to 'a fiduciary duty with respect to the receipt of compensation

for services' is hardly pellucid." *Jones v. Harris Assocs. L.P.*, 559 U.S. 335, 345

(2010). In the words of the Second Circuit, "'The language of subsection [36](b)

is a lesson in the art of studied ambiguity in drafting of statutes.'" *Fogel v.

Chestnutt*, 668 F.2d 100, 112 (2d Cir. 1981) (Friendly, J.) (quoting Richard W.

Jennings & Harold Marsh, Jr., *Securities Regulation: Cases and Materials* 1397

(4th ed. 1977)). Few courts have analyzed subsection 36(b)(4) at all, and none has

addressed the specific question raised in this appeal.[3] Given the "studied

---

[3] The two cases cited by the Appellees do not actually adopt their reading of
subsection 36(b)(4). *See* (Brief of the Appellees at 12 & n.9.) In *Lessler v. Little*,
857 F.2d 866, 871-73 (1st Cir. 1988), the court held that the plaintiff had an
implied right of action under Section 17. Because the plaintiff already had a

ambiguity" of Section 36(b), it is necessary and appropriate to look at the statute's

legislative history, particularly with regard to the operation of subsection 36(b)(4).

The Court has two excellent pieces of legislative history to examine.

First, in his testimony before Congress, SEC Chairman Budge specifically

addressed the operation of subsection 36(b)(4).  This is the federal official who, at

the Senate's request, negotiated with Wall Street regarding the specific language

that would become the 1970 amendments to the Act.  *See Mutual Fund*

*Amendments*, 91st Cong. 173-74 ("At the urging of the Senate committee and your

committee, we renewed discussions with representatives of the industry.  The

agreements which were reached were embodied in S. 2224 . . . ."), 176-77

(describing negotiations that resulted in new Section 36(b)).

---

remedy under Section 17, the court concluded "that his complaint does not *also*
state a claim under section 36(b)."  *Id*. at 874 (emphasis added).  Thus, in the
*Lessler* court's view, the "rights and remedies under section 17 and section 36(b)
are intended to be mutually exclusive" in the sense that they are not cumulative.
*See id*.  Here, the Appellees take the position that Plaintiffs do not have a remedy
under either Section 17 or Section 36(b).  Furthermore, the claims in *Lessler* only
involved an investment company and its investment adviser.  *Id*. at 867-68.  They
did not involve excessive compensation paid to an affiliate of the investment
adviser (in this case, BTC), so the court did not address how such compensation is
treated in a Section 36(b) claim against the investment adviser (in this case, BFA).
The other case cited by the Appellees barely mentions subsection 36(b)(4) in a
footnote, saying that the plaintiffs pled their Section 17 and Section 36(b) claims in
the alternative.  *Rohrbaugh v. Inv. Co. Inst.,* No. 00-1237, 2002 U.S. Dist. LEXIS
13401, at *9 n.8 (D.D.C. July 2, 2002).  The court dismissed both claims for
reasons unrelated to subsection 36(b)(4).  *See id*., at **20, 28-29.

Chairman Budge emphasized that, despite the language in subsection 36(b)(4), "any amounts received, from whatever source by an investment adviser, its affiliates and other persons specified in section 36(a) in transactions subject to section 17 or 22 could, of course, be taken into account by a court in determining whether the advisory fees meet the standards of section 36(b)." *Id*. at 177-78. As an example, even if Section 17(e) permitted an affiliated broker-dealer to receive commissions, such commissions "could be taken into account in determining whether the adviser should have reduced its fees because of the benefits it received from the brokerage commissions." *Id*. at 178.

Second, the Senate report accompanying the bill that was passed as Section 36(b) read the statute the same way as Chairman Budge:

> The fiduciary duty of the investment adviser is extended not only to compensation paid to the investment adviser but also to payments made by the investment adviser or its shareholders to an affiliated person of the investment adviser. This provision affords a remedy if the investment adviser should try to evade liability by arranging for payments to be made not to the adviser itself but to an affiliated person of the adviser.

S. Rep. No. 91-184, at 16 (1969), *reprinted in* 1970 U.S.C.A.N.N. 4897, 4910-11.

The Appellees wrongly assert, "[E]ven if a review of the legislative history were appropriate, it would have no impact here. The only such 'history' identified by Plaintiffs in their Opening Brief is a statement made to Congress by former SEC Chairman Budge that affiliate compensation may be 'taken into account by a court

in determining whether . . . advisory fees meet the standards of Section 36(b).'"
(Brief of the Appellees at 24-25 (scare quotes in original).)  To the contrary,
Plaintiffs also specifically cited the Senate report accompanying the 1970
amendments because that report "reflects Chairman Budge's understanding of how
Section 36(b) operates."  *See* (Brief of the Appellants at 19-20.)

It is no surprise that the Appellees would like to minimize the import of
Chairman Budge's testimony about the operation of the statute, as well as to
completely disregard the Senate report that accompanied the legislation.

The Appellees characterize Chairman Budge's statement about the operation
of subsection 36(b)(4) as merely "a single statement of one individual" before a
Congressional committee.  (Brief of the Appellees at 25.)  In the context of drafting
the 1970 amendments to the Act, Chairman Budge was more than simply "one
individual"; he was the primary architect of the legislation.  His testimony
regarding the purpose of subsection 36(b)(4), as well as the liability of investment
advisers for excessive payments to their affiliates, is directly relevant to this appeal
and vital to understanding the statutory scheme.  "Administrative interpretations
are especially persuasive where . . . the agency participated in developing the
provision."  *Miller v. Youakim*, 440 U.S. 125, 144 (1979); *see also Aluminum Co.
of America v. Central Lincoln Peoples' Utility Dist.*, 467 U.S. 380, 390 (1984)

(deferring to agency because it "was intimately involved in the drafting and consideration of the statute by Congress").

### 2. The Remedial Language in Section 36(b)

The allegations in the Complaint against BFA and BTC tracked the operative language of Section 36(b). Plaintiffs alleged in their Complaint that BFA and BTC:

> (1) are investment advisers (R. 1, Complaint, 6, 26 (¶¶ 15, 112, 113));
>
> (2) who owe a fiduciary duty to investors (*id.*, 27 (¶¶ 115, 116));
>
> (3) for payments made to themselves (*id.*, 27-28 (¶¶ 121, 122));
>
> (4) and to their affiliates (*id.*, 17, 27-28 (¶¶ 64, 121));
>
> (5) and that those payments constitute "grossly excessive fees far beyond what would be negotiated in arm's length transactions." (*id.*, 17 (¶ 64).)

Plaintiffs' allegations against BFA and BTC should be unsurprising in light of the operative language of Section 36(b). The first sentence of Section 36(b): (1) establishes a fiduciary duty; (2) on the part of investment advisers; (3) for compensation *or* payments of a material nature); (4) paid by the investment company *or* the investors; (5) to the investment company *or* any affiliated person of the investment adviser. 15 U.S.C. § 80a-35(b) (emphasis added).

### 3.     Subsection 36(b)(4) and Subsection 36(b)(3)

The district court dismissed Plaintiffs' Complaint pursuant to Fed. R. Civ. P.

12(b)(6) based entirely on its interpretation of subsection 36(b)(4).   (R. 48,

Memorandum, 896-98.)  Subsection 36(b)(4) provides that Section 36(b) does not

apply to compensation or payments "made in connection with" Section 17

transactions.  15 U.S.C. § 80a-35(b)(4).  Section 17 covers the waterfront of

transactions between investment companies and their affiliates:

> (1) affiliates' selling securities or other property to the investment company (Section 17(a)(1));
>
> (2) affiliates' buying securities or other property of the investment company (Section 17(a)(2));
>
> (3) affiliates' borrowing of money or other property of the investment company (Section 17(a)(3));
>
> (4) affiliates' loaning of money or other property to the investment company (Section 17(a)(4));
>
> (5) affiliates' participation in any joint transaction with the investment adviser that contravenes SEC rules and regulations (Section 17(d));
>
> (6) affiliates' accepting compensation for acting as an agent in the purchase or sale of any property to or for the investment company (Section 17(e)(1)); and
>
> (7) affiliates' accepting a commission outside specified limits for acting as a broker in the sale of securities to or by the investment company (Section 17(e)(2)).

*See id*. § 80a-17.

Because Section 17 covers virtually all transactions between investment companies and their affiliates, there is an inherent conflict between the remedial language of Section 36(b) and an isolated reading of subsection 36(b)(4).  The remedial language of Section 36(b) imposes a fiduciary duty on investment advisers for "compensation or payments" made to themselves *or their affiliates*, yet subsection 36(b)(4), as argued by the Appellees, takes all transactions involving investment advisers and their corporate affiliates outside of Section 36(b) entirely.

This conflict between the primary language of Section 36(b) and the carve-out in subsection 36(b)(4) is resolved by subsection 36(b)(3), which provides that the amount recoverable against the investment adviser is the "actual damages resulting from the breach of fiduciary duty," and that a plaintiff's recovery is limited to "such compensation or payments" received by the adviser up to one year prior to the filing of a Section 36(b) action against the investment adviser.  *See id*. § 80a-35(b)(3).  Reading these three provisions together, plaintiffs may properly allege a cause of action against investment advisers for their breach of fiduciary duty in overpaying themselves or their corporate affiliates; however, plaintiffs cannot sue the adviser's affiliates directly for the adviser's breach of its fiduciary duties.

In their brief on appeal, the Appellees do not acknowledge any tension, conflict, or ambiguity in the statutory language of Section 36(b).  They assert that

the statute is "clear" and argue that Plaintiffs are asking this Court to "rewrite" Section 36(b)(4).  (Brief of the Appellees at 20.)  Moreover, the Appellees never explain how subsection 36(b)(4) operates in conjunction with the entire statutory scheme.  "Hardly pellucid," *see Jones*, 559 U.S. at 345, is the opposite of "clear."  Again, according to the Second Circuit, "The language of subsection [36](b) is a lesson in the art of studied ambiguity in drafting of statutes."  *Fogel*, 668 F.2d at 112 (quotations omitted).  In this case, the apparent conflict between the first sentence of Section 36(b) and subsection 36(b)(4), on one hand, and the limitation in subsection 36(b)(3), on the other hand, is certainly part of the statute's "studied ambiguity."  It is that ambiguity that must be resolved by the Court in this case, despite the Appellees' effort to have this Court read subsection 36(b)(4) alone and in isolation.

When this Court examines the provisions of the entire statute, as well as the statute's legislative history (discussed above) and subsequent treatment by the SEC, subsection 36(b)(4) does not address, much less preclude, Plaintiffs' claims against BFA and BTC as investment advisers for breach of their fiduciary duties.

### 4.    Canons of Statutory Interpretation

The Appellees' approach to this appeal defies standard judicial approaches to statutory construction.  Courts traditionally interpret statutes using the following relevant guidelines:

(1) Statutes are to be interpreted in their entirety, giving effect to each provision and term of the statute; *see*, *e.g.*, *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991); *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883);

(2) Remedial statutes are to be interpreted broadly; *see*, *e.g.*, *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967); *Cobb v. Contract Transport, Inc.*, 452 F.3d 543, 559 (6th Cir. 2006);

(3) Limitations to remedial statutes are to be interpreted narrowly; *see*, *e.g.*, *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960); *Cobb*, 452 F.3d at 559; and

(4) Statutes should not be interpreted to produce absurd results; *see*, *e.g.*, *Public Citizen v. United States Dep't Justice*, 491 U.S. 440, 454 (1989); *Dewsnup v. Timm*, 502 U.S. 410, 427 (1992) (Scalia, J., dissenting).

The Appellees' approach to interpreting Section 36(b) contravenes each of these ordinary canons of statutory construction.

The Appellees' position requires one to read subsection 36(b)(4) broadly and in complete isolation from the rest of the statute. While the Appellees acknowledge that Section 36(b) is part of a "remedial scheme," *see* (Brief of the Appellees at 27), they focus their entire argument on subsection 36(b)(4). In doing so, the Appellees fail to give effect to the entire statute, particularly Section 36(b)'s first sentence and subsection 36(b)(3).

In the first sentence of Section 36(b), which is the operative provision of the section, Congress imposed a fiduciary duty on the part of investment advisers regarding their own compensation, as well as the compensation of their affiliates.

In subsection 36(b)(3), Congress established the remedy for violation of the fiduciary duty established in the first sentence of the section. Subsection 36(b)(3) provides that "actual damages resulting from the breach of fiduciary duty" is the measure of damages for a breach of the duty established under the section. 15 U.S.C. § 80a-35(b)(3). Furthermore, subsection 36(b)(3) provides a cap on damages equal to the amount of "such compensation or payments" made to the investment adviser up to one year prior to the filing of suit. *Id*. Because Section 36(b) only establishes a fiduciary duty on the part of investment advisers ("the investment adviser of a registered investment company shall be deemed to have a fiduciary duty . . ."), only an investment adviser, and not its affiliates, is subject to liability under subsection 36(b)(3) for breach of fiduciary duty.

Following immediately after subsection 36(b)(3), subsection 36(b)(4) is properly interpreted to prevent recovery by investors directly from the adviser's affiliates. A recovery is available from investment adviser—and only from the investment adviser—for breach of the fiduciary duty according to the terms of subsection 36(b)(3). It follows, and subsection 36(b)(4) makes explicit, that no cause of action lies against the adviser's affiliates for the adviser's breach of fiduciary duty. In protecting advisers' affiliates from direct suit by investors for the affiliates' "compensation or payments," subsection 36(b)(4) never, by its terms,

addresses "such compensation or payments" received by the adviser. *Compare* 15 *id*. § 80a-35(b)(4) *with id*. § 80a-35(b)(3).

The Appellees' interpretation of the subsection 36(b)(4) carve-out is shockingly broad. The Appellees assert that subsection 36(b)(4) "provides that fund shareholders have *no* right of action *whatsoever* under Section 36(b) with respect to compensation paid to investment advisers or their affiliates in connection with transactions subject to Section 17 . . . ." (Brief of the Appellees at 10 (emphasis added).) Yet the Appellees' broad assertion is belied by the fact that SEC Rule 17d-1(c) directly removes "an investment advisory contract" from the ambit of Section 17. *See* 17 C.F.R. § 270.17d-1(c).

More importantly, in light of the fact that virtually all transactions involving investment advisers and their affiliates are subject to Section 17, the Appellees' broad interpretation of subsection 36(b)(4) would eliminate any civil liability for a large range of conduct. A narrow interpretation of subsection 36(b)(4), by which the affiliates' excessive fees may be recovered from the investment adviser out of its own compensation, harmonizes subsection 36(b)(4) with the statute's other language and fulfills Congress' remedial purpose in amending the Act. Such a narrow interpretation of subsection 36(b)(4) conforms to the interpretation of the statute advanced by its primary architect, SEC Chairman Budge, as well as the Senate committee that approved Section 36(b).

16

As alleged in the Complaint, BFA and BTC are investment advisers that breached their fiduciary duties to iShares investors by overpaying themselves and their affiliates. Pursuant to subsection 36(b)(4), BFA's and BTC's corporate affiliates are not liable for BFA's and BTC's wrongful conduct, but BFA and BTC themselves remain liable, as investment advisers, pursuant to Section 36(b).[4]

### 5.     *Norwest Bank*

A narrow interpretation of subsection 36(b)(4), which preserves the advisers' fiduciary duty obligations to investors, would also conform to the SEC's interpretation of the statutory scheme in *In re Norwest Bank Minnesota, N.A. and Society National Bank*, 1995 SEC No-Act. LEXIS 529 (May 25, 1995).

The Appellees would have this Court disregard the SEC's interpretation of the Act regarding the fiduciary duties owed when an adviser transacts business with one of its affiliates, specifically with regard to securities-lending operations. The Appellees argue that the Office of Chief Counsel's interpretation of the Act in *Norwest Bank* is merely a staff no-action letter with "no binding authority." (Brief

---

[4] The Appellees assert that, when applying the Section 36(b) fiduciary duty standard, a court must separately evaluate the compensation paid to BFA for investment advisory services and the compensation paid to BTC for securities lending services. (Brief of the Appellees at 21-23.) This argument is premature. The district court held that Plaintiffs have no right, as a matter of law, to proceed against any defendant pursuant to Section 36(b). The correctness of that ruling is the subject of this appeal. If this Court reverses, then, on remand, the district court may, for the first time, address any contentions about how the "actual damages" for the advisers' breach of fiduciary duty should be calculated or limited. *Cf.* 15 U.S.C. § 80a-35(b)(3).

of the Appellees at 13.)  As with the importance of Chairman Budge's role in

drafting the 1970 amendments to the Act, the Appellees' argument regarding

*Norwest Bank* unreasonably minimizes the role that this no-action letter has played

in the development of the securities-lending industry through the use of adviser

affiliates.

By characterizing *Norwest Bank* as simply a "staff no-action letter," the

Appellees fail to recognize that the Commission itself has incorporated *Norwest*

*Bank* into numerous formal Releases regarding securities lending, which form the

legal edifice for the entire securities-lending industry.  *See* (Brief of the Appellants

at 31 n.14 for a list of the major securities-lending-industry Releases citing

*Norwest Bank*.)  Furthermore, while certainly not "binding authority," *Norwest*

*Bank* is entitled to significant deference, not just because of the central role that it

has played in the securities-lending industry, but because of how it specifically

addresses advisers' affiliate compensation and advisers' persisting Section 36(b)

duties.

In *Norwest Bank*, the SEC's Office of Chief Counsel emphasized that when

an adviser's affiliate acts as custodian of a securities-lending operation, "the

Custodian's compensation *would be subject to section 36(b)* of the Investment

Company Act and, therefore, must fall within the range of what would have been

negotiated by the parties at arm's length."  1995 SEC No-Act. LEXIS 529, at *10

(emphasis added). Furthermore, the Office of Chief Counsel, applying Section 17(d), emphasized that "Although rule 17d-1 does not apply to the Program, we note that section 36(b) of the Investment Company Act expressly places a fiduciary duty on investment advisers with respect to any compensation paid to affiliated persons of the adviser." *Id.*, at \*12 n.14.

The Appellees do not acknowledge *Norwest Bank*'s preservation of Section 36(b) fiduciary duties when an adviser's affiliates conduct securities-lending operations. In fact, the Appellees explicitly omit the key footnote regarding Section 36(b) from their quotation of *Norwest Bank*. *See* (Brief of the Appellees at 14 ("(footnote omitted)").) Thus, while the Appellees try to "distinguish" the factual situation in *Norwest Bank* from this situation, they never directly address the fact that *Norwest Bank* stands for the legal proposition that, regardless of whether Section 17 applies to a given situation, investment advisers remain accountable under Section 36(b) for their (and their affiliates') compensation.

Read as a whole, and consistent with both the legislative history of the Act and *Norwest Bank*, Section 36(b) imposes a fiduciary duty upon BFA and BTC, as investment advisers, regarding their compensation, and that of their affiliates, out of iShares resources. The district court's interpretation of subsection 36(b)(4) was erroneous, and the district court's dismissal of Plaintiffs' Section 36(b) claims against BFA and BTC should be reversed.

## II.    PLAINTIFFS STATED A CLAIM UNDER SECTION 36(a)

The Appellees assert that the Supreme Court's decision in *Alexander v. Sandoval*, 532 U.S. 275 (2001), and its follow-on cases "foreclose a private right of action under Section 36(a)."  (Brief of the Appellees at 29.)

In *Sandoval*, the Supreme Court held that Congress had intended to create private rights of action under Section 601 of Title VI.  532 U.S. at 279-80 ("It is thus beyond dispute that private individuals may sue to enforce § 601") (Scalia, J.). In finding an implied right of action under Section 601, the Supreme Court emphasized that federal courts must rely upon the text and structure of a statute when deciding whether to find implied rights of action.  *Id*.

The Investment Company Act of 1940 provides an explicit grant of federal court jurisdiction over "all suits in equity and actions at law brought to enforce any liability or duty created by, or duty created by" the Act.  15 U.S.C. § 80a-43.  In *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 21-24 (1979), the Supreme Court found a private right of action for rescission under the Act's companion legislation, the Investment Advisers Act of 1940, which had virtually identical jurisdictional language.   The Appellees nakedly assert that Plaintiffs' reliance on *Transamerica* "is misplaced" and that *Transamerica* is "not to the contrary" of lower-court decisions that rejected implied rights of action under the Investment Company Act."  (Brief of the Appellees at 33).  However, the Appellees

never address how the text and structure of the Investment Company Act is, as a matter of substance, any different than the decisive language of the Investment Advisers Act relied upon by the Supreme Court in *Transamerica*. If anything, the Investment Company Act's inclusion of "and actions at law" in its jurisdictional provision, *see* 15 U.S.C. § 80a-43, militates heavily in favor of finding an implied right of action for actual damages under the statute. *Cf. Transamerica*, 444 U.S. at 21-22 (finding that omission of this phrase from Investment Advisers Act suggested no private right of action for damages).

Rather than deal with the text and structure of the Investment Company Act, or the substance of the Supreme Court's decision in *Transamerica*, the Appellees rely upon what they refer to as the "modern trend" of lower-court decisions, which have rejected implied rights of action under the Act. (Brief of the Appellees at 32.) Such lower-court decisions are not binding on this Court, and, respectfully, none of them adequately addresses the Supreme Court's decision in *Transamerica*, the Supreme Court's actual holding in *Sandoval*, the long-standing line of lower-court decisions that have found implied rights of action under the Act, or the legislative history of the 1980 amendments to the Act. *See* (Brief of the Appellants at 34-43).

## CONCLUSION

The notable similarity between the Appellees' Section 36(b) argument and their Section 36(a) argument is their studied avoidance of any discussion of

Congress' intent in passing and amending the Investment Company Act. Rather than directly addressing the text, structure, purpose, and history of the Act and its amendments, the Appellees ask this Court to disregard the allegations in Plaintiffs' Complaint, *see* (Brief of the Appellees at 23); disregard the arguments made by Plaintiffs below, *see* (*id*.); disregard the arguments made by Plaintiffs in this appeal, *see* (*id*. at 13, 17-18, 34-36); disregard the entire remedial language in Section 36(b), *see* (*id*. at 19-20); disregard the legislative history of Section 36(b), *see* (*id*. at 23-24); disregard *Norwest Bank*, *see* (*id*. at 12-16); disregard the text of Section 36(a), *see* (*id*. at 29-32); disregard the Supreme Court's decision in *Transamerica*, *see* (*id*. at 33); and disregard the many long-standing lower-court decisions that have found an implied right of action under Section 36(a), *see* (*id*. at 33-34).

The Appellees ask this Court to interpret subsection 36(b)(4) in a complete vacuum and to blindly follow the "modern trend" of lower-court decisions regarding Section 36(a). As a matter of law, however, this Court is obliged to interpret the statute as a whole, to examine the statute's legislative history, and to fulfill Congress' remedial purpose in enacting the legislation.

Given the inherent conflicts of interest present in the management of investment companies, Congress passed the Investment Company Act in 1940. In order to better protect investors, Congress significantly amended the Act in 1970.

Congress' primary purpose in passing and amending the Act was to protect investors—like the laborers, plumbers, and pipefitters who are Plaintiffs in this case—from having their investments looted by investment advisers like BFA and BTC.  As alleged in the Complaint, the amount of investor money that has been wrongfully siphoned by BFA and BTC is vast.  The notion advanced by the Appellees that Congress intended for investors to have no private remedy under the Act to protect themselves from their investment advisers, so long as the investment advisers use affiliates to overpay themselves, should be rejected.

This Court should reverse the district court's dismissal of Plaintiffs' Section 36(b) claims against BFA and BTC.  This Court should also reverse the district court's dismissal of plaintiffs' Section 36(a) claims against the director defendants.

Dated: April 3, 2014                      Respectfully submitted,

*/s/ James G. Stranch, III*

James G. Stranch, III
J. Gerard Stranch IV
Michael G. Stewart
Michael J. Wall
**BRANSTETTER, STRANCH & JENNINGS, PLLC**
227 Second Avenue North
Nashville, TN 37201
Tel: (615) 254-8801

**THE PICKRELL LAW GROUP, P.C.**
C. Mark Pickrell
William G. Brown
Andrew E. Hill

5701 Old Harding Pike, Suite 200
Nashville, TN 37205
Tel: (615) 352-9588

**ROBBINS ARROYO LLP**
Brian J. Robbins
Craig W. Smith
Jenny L. Dixon
600 B. Street, Suite 1900
San Diego, CA 92101
Tel:  (619) 525-3990

*Attorneys for Appellants*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(a)(7)(C), I hereby certify that the foregoing brief was prepared in Microsoft Word with 14-point Times New Roman, a proportionally-spaced typeface.  The portions of the brief specified in Fed. R. App. P. 32(a)(7)(B)(iii) contain a total of 5,832 words, as calculated by my word processing software.

*/s/ James G. Stranch, III*
James G. Stranch, III

**CERTIFICATE OF SERVICE**

I hereby certify that on April 3, 2014, a copy of this brief was served on counsel of record for all parties through the Court's CM/ECF system.

*/s/ James G. Stranch, III*
James G. Stranch, III